**ANIVAL VAZQUEZ, JR., Appellant/Defendant**

**v.**

**MARISSA R. SMITH VAZQUEZ, Appellee/Plaintiff**

S. Ct. Civ. No. 2008-0108

Supreme Court of the Virgin Islands

October 15, 2010

DOLACE MCLEAN, ESQ., Visions Law Firm, St. Thomas, USVI, *Attorney for Appellant.*

 

MARISSA R. SMITH VAZQUEZ, St. Thomas, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 15, 2010)

HODGE, C.J. Appellant Anival Vazquez (hereinafter "Anival") requests that this Court vacate the Superior Court's May 22, 2007 Permanent Restraining Order (hereinafter "PRO") against him and expunge his record on the grounds that (1) the Superior Court violated his due process rights by disallowing his retained counsel's participation at the PRO hearing; and that (2) there was insufficient evidence to support the court's finding that Anival committed an act of domestic violence as defined in title 16, section 91(f) of the Virgin Islands Code. We agree that the Superior Court violated Anival's due process rights, and consequently, for the reasons that follow, vacate the Superior Court's May 22, 2007 PRO.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2006, Marissa Smith Vazquez (hereinafter "Marissa") filed a petition for divorce from Anival in the Family Division of the Superior Court. Although Anival and Marissa reached a mediated agreement on certain issues related to the divorce, such as custody and child support, on September 15, 2006, their attempt to address long-term visitation rights was unsuccessful.

Following Anival and Marissa's failed attempt to address visitation, Marissa filed a domestic violence complaint with the Superior Court on March 29, 2007. On May 22, 2007, the Superior Court held, via teleconference, a domestic violence hearing on the complaint, with Anival and his counsel on St. Thomas and the trial judge on St. Croix. Although present, Anival's counsel was not permitted to participate during the evidentiary phase of the proceedings. At the end of the May 22, 2007 hearing, the Superior Court found that Anival subjected Marissa to harassment as defined in title 16, section 91(f) of the Virgin Islands Code and issued a PRO against Anival, effective until May 22, 2009.

Shortly after the Superior Court issued the PRO, Anival mailed a letter to the trial judge's chambers stating in its opening sentence: "I wish to appeal the Permanent Restraining Order." (Letter, June 7, 2007.) Nothing

in the record indicates that the trial judge responded to Anival's letter. Moreover, while Anival's letter was dated June 7, 2007, it never received a Superior Court date stamp. After approximately two years had elapsed, Anival inquired about the status of his appeal at the Supreme Court of the Virgin Islands. On August 7, 2009, this Court issued an order requiring both parties to brief the issues of whether Anival's letter constituted a timely notice of appeal and whether the expiration of the PRO on May 22, 2009 rendered Anival's appeal moot. Following Anival's response to this Court in an August 27, 2009 letter, we concluded, in a September 9, 2009 Order, that Anival's June 7, 2007 letter constituted a timely filed notice of appeal and that the instant appeal fell within the collateral consequences exception to the mootness doctrine.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Supreme Court has jurisdiction over this appeal, which arises from a final judgment of the Superior Court, pursuant to title 4, section 32 of the Virgin Islands Code.

 In her *pro se* brief, Marissa argues that this Court should dismiss this appeal as "improvidently granted," effectively requesting that this Court reconsider its September 9, 2009 Order. (Appellee's Br. 4.) As a threshold matter, we note that, although this Court's August 7, 2009 Order required both Anival and Marissa to submit briefs on or before August 28, 2009, Marissa never submitted any response to this Court's order. Consequently, because no statute requires that a civil litigant file a notice of appeal to this Court within thirty days or prohibits this Court from considering moot appeals,[1] neither requirement relates to this Court's

---

[1] Although "some aspects of Article III's requirement that a court only rule on actual cases and controversies have been incorporated into Virgin Islands jurisprudence," *V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 280 (V.I. 2008) (citing *Dennis v. Luis*, 741 F.2d 628, 630 (3d Cir. 1984)) "this Court . . . [is] not [an] Article III court[.]" *Arlington Funding v. Geigel*, 51 V.I. 118, 124 (V.I. 2009). Therefore, this Court's general practice of not considering a moot appeal on the merits is not jurisdictional, but an exercise of judicial restraint that, as with other judicially-created doctrines, is subject to waiver. *See Nini v. Mercer County Cmty. Coll.*, 202 N.J. 98, 995 A.2d 1094, 1105 (N.J. 2010) (explaining that, because New Jersey constitution does not limit New Jersey Supreme Court's jurisdiction to actual cases and controversies, requirement that appeal not be "moot" or "academic" is "a matter of judicial restraint" that court possesses discretion to waive).

subject matter jurisdiction, and thus Marissa has waived her right to challenge either issue. *See Gov't of the V.I. v. Martinez*, No. 08-2694, 620 F.3d 321, 2010 U.S. App. LEXIS 18751, *9 (3d Cir. Sept. 8, 2010) (explaining that, because time to file notice of appeal in a criminal case is not set by statute, timeliness requirement is a claims processing rule whose application the government forfeited when it failed to respond to order advising parties that notice of appeal may have been untimely); *see also Archer v. Caribbean Auto Mart, Inc.*, 379 Fed. Appx. 157, 159 (3d Cir. 2010) (unpublished).

■ Nevertheless, even if Marissa could, for the first time in her appellate brief, challenge this Court's decision to allow the instant appeal to proceed on the merits, this Court cannot conclude that reconsideration of any aspect of its September 9, 2009 Order is warranted. We note that Anival proceeded on appeal *pro se* until February 22, 2010, at which time his counsel of record filed a notice of appearance with this Court. Supreme Court Rule 4(g) provides that "[t]he Superior Court shall deem a paper filed by a *pro se* litigant after the decision of the Superior Court in a civil or criminal case, or in a habeas corpus case, to be a notice of appeal despite informality in its form or title if it evidences an intention to appeal." V.I.S.CT.R. 4(g). Further, as noted by this Court, "appellate courts will liberally construe purported notices of appeal, 'particularly those of *pro se* litigants,' and allow an appeal to proceed so long as the 'intent to appeal the judgment' is 'apparent' and there is 'no prejudice to the adverse party.' " *Vazquez v. Vazquez*, S.Ct. Civ. No. 2008-0108, slip op. at 2 (V.I. Sept. 9, 2009) (citing *Berdella v. Delo*, 972 F.2d 204, 207 (8th Cir. 1992)).

■ In our September 9, 2009 Order in this case, this Court, *inter alia*, concluded that both of these requirements were met. In that order we stated:

> Although Appellant's letter to the family judge could plausibly be con-strued as either a notice of appeal or a motion for reconsideration, the letter's first sentence — "I wish to appeal the Permanent Restraining Order." — constitutes sufficient manifestation of an intent to appeal even if the last paragraph appears to request affirmative relief from the family judge.

*Id.* (Citations omitted). Furthermore, we noted that Anival provided Marissa with sufficient notice by mailing her counsel[2] a copy of his letter, and that Marissa never alleged any prejudice. Accordingly, because the Superior Court's Order was entered on May 22, 2007, and the notice of appeal was filed on June 7, 2007, this appeal was timely filed.[3] *See* V.I.S.CT.R. 5(a)(1) ("In a civil case . . . the notice of appeal shall be filed with the Clerk of the Superior Court within thirty days after the entry of the judgment or order appealed from.")

■ Likewise, this Court finds no basis to reconsider its prior holding that Anival's appeal falls within the collateral consequences exception to the mootness doctrine established by the United States Supreme Court in *Carafas v. LaVallee*, 391 U.S. 234, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968). "[T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not." *Putman v. Kennedy*, 279 Conn. 162, 900 A.2d 1256, 1261 (2006) (quoting *State v. McElveen*, 261 Conn. 198, 802 A.2d 74 (2002)).

■ ■ This Court, in its September 9, 2009 Order, noted that "[a]ppellate courts have consistently held that the [collateral] consequences" of a domestic violence restraining order, "as well as the significant reputational harm associated with a finding that a litigant has committed an act of domestic violence, serve as an exception to the mootness doctrine and allow an appellate court to review expired domestic violence restraining orders." *Vazquez*, slip op. at 4 (collecting cases). As the Connecticut Supreme Court has recently observed in

---

[2] Although Marissa appeared at the May 22, 2007 hearing *pro se*, the record indicates that she was represented by counsel throughout the Superior Court proceedings and that counsel filed several documents on her behalf, including her initial petition for divorce.

[3] We note that Anival's letter does not bear a Superior Court date stamp and was apparently not docketed upon receipt by the court and, consequently, the Superior Court cannot verify the letter's actual date of receipt. However, as stated in our September 9, 2009 Order, Anival maintained that he timely mailed his letter to the family judge and, given that the Superior Court has chosen to deem his letter filed on June 7, 2007, we must resolve the ambiguity in favor of Anival. *Vazquez*, slip op. at 3 (citing *Grey v. Grey*, 111 Nev. 388, 892 P.2d 595, 597 (Nev. 1995) ("The testimony illustrates that the date of receipt . . . by the clerk's office is, at the very least ambiguous. Accordingly, we are compelled to resolve the ambiguity in Roxanne's favor.")).

allowing an appeal of an expired domestic violence restraining order to proceed under the collateral consequences exception, "being the subject of a court order intended to prevent or stop domestic violence may well cause harm to the reputation and legal record of the defendant," and thus such restraining orders "fit[] squarely within the bounds of our prior cases recognizing reputation harm and other potential legal disabilities as collateral consequences of otherwise moot court orders." *Putman*, 900 A.2d at 1263. Significantly, "domestic violence restraining orders . . . are available to agencies investigating future allegations involving the same family, and a trial judge making a future custody determination also reasonably might consider the issuance of a domestic violence restraining order in making that sensitive decision," meaning that "in the sensitive and often explosively litigated context of family dysfunction and dissolution, there is a reasonable possibility that a domestic violence restraining order will have prejudicial collateral legal consequences for its subject, even after its expiration." *Id.* In fact, it appears that every jurisdiction that has considered this issue has held that a defendant's appeal of an expired domestic violence restraining order satisfies the collateral consequences exception established in *Carafas* because of both the inherent reputational harm and stigma associated with a finding that one has committed domestic violence and the impact of the domestic violence restraining order on future legal proceedings.[4]

---

[4] *See Hamilton ex rel. Lethem v. Lethem*, 119 Haw. 1, 193 P.3d 839, 846-47 (2008); *Roark v. Roark*, 551 N.E.2d 865, 868-69 (Ind. Ct. App. 1990) (noting "potentially devastating" collateral consequences for parent of expired "child in need of services" order, including impacts on future presentence investigations, in-court impeachments, and child custody determinations); *Wooldridge v. Hickey*, 45 Mass. App. Ct. 637, 700 N.E.2d 296, 298 (1998) (holding appeal from abuse prevention order not moot due to order's expiration because of collateral consequences, including effect in future proceedings and "stigma"); *Piper v. Layman*, 125 Md. App. 745, 726 A.2d 887, 891 (1999) (holding "expiration of the protective order does not automatically render the matter moot" because of "[h]eightened public awareness and sensitivity to the existence of domestic violence, as well as legitimate public contempt for abusers" and enhanced technology for information dissemination); *In re A.K.*, 360 N.C. 449, 628 S.E.2d 753, 759 (2006) (allowing appeal from finding of child neglect, even though full custody later restored, because neglect finding "could have adverse consequences" in future custody proceedings and "may detrimentally impact societal and interpersonal relationships"); *Smith v. Smith*, 145 N.C. App. 434, 549 S.E.2d 912, 914 (2001) (holding expired domestic violence restraining order not moot because of "collateral legal consequences" such as consideration in custody determination and "non-legal collateral consequences" such as reputational harm); *Wilder v. Perna*, 174 Ohio App. 3d 586, 883 N.E.2d

 In addition to the inherent reputational harm from a finding that one has committed an act of domestic violence, Virgin Islands law imposes several collateral legal consequences on those found to have committed domestic violence. As the Connecticut Supreme Court noted, the best interests of the child standard — which this Court recently adopted in *Madir v. Daniel*, 53 V.I. 623, 631-32 (V.I. 2010) — requires that a judge consider prior domestic violence restraining orders when making a child custody determination. *Putman*, 900 A.2d at 1263. Moreover, in the event Anival is ever charged, at a future date, with the crime of domestic violence, the Virgin Islands Code provides that the trial judge, when determining whether to impose a deferred sentence pursuant to section 99a of title 16, may consider "the history of previous incidents of domestic violence. . . ." 16 V.I.C. § 99(i)(3). Accordingly, because the PRO may continue to harm Anival's reputation and impact his legal rights despite its expiration, Anival is entitled to have the instant appeal considered on the merits pursuant to the collateral consequences exception to the mootness doctrine.

We review the trial court's findings of fact for clear error while its conclusions of law are subject to plenary review. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

### B. The Superior Court Violated Anival's Due Process Rights by Disallowing His Retained Counsel's Participation During The PRO Hearing

Anival argues that the Superior Court violated his due process rights by disallowing his counsel's participation in the May 22, 2007 domestic violence proceeding, at which a PRO was issued against Anival. Specifically, Anival contends that the result of disallowing his counsel's participation in the May 22, 2007 proceeding was that he lacked "a meaningful opportunity to cross-examine . . . Marissa . . . and to present

---

1095, 1099 (2007) (allowing appeal of expired domestic violence restraining order due to reputational harm and "because it [was] reasonably possible that adverse collateral consequences may occur."); *James v. Hubbard*, 21 S.W.3d 558, 560 (Tex. App. 2000) ("Although expired temporary protective orders and restraining orders have been considered moot, none of these cases has carried the same social stigma as a protective order granted based on a finding of family violence"); *In re Interest of H.Q.*, 152 Wis. 2d 701, 449 N.W.2d 75, 77-78 (1989) (holding expired child abuse protective order not moot because of possible effect on future custody determinations).

evidence to rebut . . . [her] allegations." (Appellant's Br. 9.) Marissa argues that contrary to Anival's claim that his counsel did not participate in the May 22, 2007 hearing, "his counsel not only participated in the proceeding below[,] but . . . *actively* participated." (Appellee's Br. 4.) Marissa asserts that Anival's counsel argued Anival's defense[5] and argued that there was insufficient evidence to support the court's finding that Anival subjected Marissa to acts of domestic violence. (Appellant's App. 77.) Marissa also contends that Anival's counsel did not object to the court's procedure at trial.

██ ██ A PRO hearing is quasi-criminal in nature, and therefore, pursuant to Superior Court Rule 84, a defendant in such a proceeding has the right "to retained counsel and to be informed of that right by the court." *Bernhardt v. Bernhardt*, 51 V.I. 341, 351 (V.I. 2009). Moreover, "preventing retained counsel from presenting evidence and arguments on behalf of a party during [a domestic violence PRO] proceeding violates due process." *Id.* at 353. At the beginning of the May 22, 2007 hearing, the court stated that Anival's attorney could not participate in the hearing but could remain present. (Appellant's App. 38.) Marissa was then given an opportunity to explain why she filed a petition for a PRO against Anival. Following Marissa's testimony, the Superior Court asked Anival to respond to Marissa's testimony. The Superior Court did not indicate that either party could cross-examine the other. Throughout the proceeding, Anival's attorney was barred from presenting any evidence or advancing any arguments on Anival's behalf.

██ Although Anival's counsel asked the court to reconsider issuing the PRO because Marissa failed to present any evidence of particular instances during which she felt that her life was threatened or in danger, this limited involvement in the proceedings came only after the court made its findings and its decision to issue the PRO, not at the stage in the hearing during which the due process guarantees referred to in *Bernhardt*

---

[5] We note that the first example of counsel participation that Marissa cites is actually limited to counsel's explanations in response to inquiries made by the trial judge — after the close of evidence — explaining why details pertaining to custody and visitation were not included in the settlement agreement and explaining why the parties had not gone back to mediation despite a court order issued in March directing them to do so. (Appellant's App. 61-62, 64-65.)

are most relevant — during the presentation of evidence.[6] Accordingly, this Court holds that the Superior Court violated Anival's due process rights by barring his retained counsel from actively participating in the PRO proceeding.[7]

## III. CONCLUSION

By disallowing Anival's counsel's participation in the May 22, 2007 domestic violence PRO hearing, the Superior Court violated Anival's due process rights. Accordingly, this Court vacates the Superior Court's May 22, 2007 PRO against Anival.[8]

---

[6] Additionally, the May 22, 2007 hearing was conducted via teleconference; the family judge was in a courtroom on St. Croix, while Anival and his counsel were physically present on St. Thomas and only addressing the Superior Court via telephone. As noted by Anival, this further exacerbates the due process concerns with the procedure at the May 22, 2007 hearing because the fact finder was unable to observe the parties and their demeanor to aid in credibility determinations.

[7] Because of this Court's decision with respect to Anival's due process argument, we need not address Anival's alternate argument that this Court should vacate the PRO on the grounds that the Superior Court's finding that Anival committed domestic violence is not supported with sufficient evidence. See Bernhardt v. Bernhardt, 51 V.I. at 347 n.3. Moreover, although Anival's appellate brief requests that this Court expunge the record of his PRO, this Court declines to reach this issue in the first instance because Anival has failed to bring a petition for expungement in the Superior Court or otherwise request that the Superior Court expunge the PRO from his record. See Ruiz v. Jung, S.Ct. Civ. No. 2008-0035, 2009 V.I. Supreme LEXIS 43, *11 (V.I. Oct. 19, 2009) ("Importantly, it is a 'well-established rule that absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.' ") (quoting Patterson v. Cuyler, 729 F.2d 925, 929 (3d Cir. 1984)).

[8] In line with our decision in Bernhardt, this Court would ordinarily reverse a Superior Court's PRO issued at a domestic violence hearing and remand the case for a new trial when retained counsel for the litigant against whom the PRO was issued was barred from actively representing the litigant at the PRO hearing. See Bernhardt, 51 V.I. at 353. However, in the case sub judice, the PRO at issue expired on May 22, 2009, there is no indication in the record that Marissa sought an extension of the PRO or a new PRO, and there is no indication on the record that the Superior Court extended the PRO beyond the May 22, 2009 expiration date. Consequently, it is not necessary for this Court to order a new trial on remand because, in the absence of a request for a new PRO, there is nothing for the Superior Court to adjudicate on remand with respect to the PRO.