**THE GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**SOUTHLAND GAMING OF THE VIRGIN ISLANDS, INC., Defendant**

Civil No. ST-09-CV-283

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 16, 2010

AQUANNETTE CHINNERY-MONTELL, ESQ., CAROL THOMAS-JACOBS, ESQ., Assistant Attorneys General, Virgin Islands Department of Justice, St. Thomas, USVI, *Counsel for Plaintiff.*

144

ARTURO WATLINGTON JR., ESQ., St. Thomas, USVI, *Counsel for Defendant.*

CARROLL III, *Judge*

## MEMORANDUM OPINION

### (December 16, 2010)

The Government of the Virgin Islands claims that its video lottery contractor, Southland Gaming of the Virgin Islands, Inc., has failed to pay gross receipt taxes since 2003, and has retained too great a percentage of the net game revenue from its video lottery services in violation of its contract. It requests relief in the form of a declaratory judgment and damages. Its claims can and should be first presented to the relevant administrative agencies and, therefore, they are unripe and must be dismissed.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

After the Legislature authorized video lottery gaming in the Virgin Islands, the Government entered into a contract with Southland Gaming. The Government now alleges that Southland is violating that contract by failing to provide the correct amount of revenue to the Virgin Islands Lottery, and is violating the tax laws by failing to pay gross receipt taxes.

The Virgin Islands Lottery, an instrumentality of the Virgin Islands Government, is supervised by a Lottery Commission and managed by a Director.[1] The Governor appoints some of the members of the Commission.[2] In 2001, the Legislature gave the Director of the Lottery the authority to "assume the powers and the duties of the Commission and act on its behalf," until the Governor appointed at least two members of the Commission.[3]

On July 1, 2003, Southland signed a contract with the Lottery to provide video gaming services in the Territory. The Director signed the

---

[1] V.I. CODE ANN. tit. 32, § 243 (1998). The Government stated in its Complaint that on December 23, 2002, the Legislature overrode the Governor's veto of Act No. 6503. (Compl. ¶ 9.) According to the Government, as a result of that legislative vote, Section 246(a)(1) was amended. However, the language recited in the Complaint does not reflect the amended statute as it reads in the Virgin Islands Code.

[2] 32 V.I.C. § 243.

[3] Act. No. 6483, § 5 (Dec. 21, 2001) (amending 32 V.I.C. § 244(a)).

contract on July 2, 2003. On July 14, 2003, the Legislature removed the authority of the Director to "assume the powers and the duties of the Commission and act on its behalf."[4] However, the Director retained his power to, "subject to the approval of the Commission," "enter into contracts for the operation of the lottery, or any part thereof, and into contracts for the promotion of the lottery."[5] On July 25, 2003, the Commissioner of Property and Procurement signed the contract. The Attorney General of the Virgin Islands approved the contract for legal sufficiency on July 28, 2003. The contract became effective the next day upon the Governor's signature.

The Director decided that gaming retailers would retain twenty-two percent of "net game revenue" as their commission. "Net game revenue" is defined in the contract as "the amount of video lottery receipts remaining after the payment of prizes only." With the remaining proceeds, Southland deducts its commission percentage, as set out in the contract, and submits the balance of the revenue to the Lottery.

Less than six months after the contract was executed, Government attorneys, together with the Lottery Director, determined that Southland should enter into a Master License Agreement ("MLA"). The Government drafted the MLA. Southland Gaming signed it on December 3, 2003, and the Lottery Director signed it on December 9, 2003. The Department of Justice approved the MLA for legal sufficiency on December 15, 2003.

The MLA states that it is "specifically understood and agreed between the parties that it is the intention of the Lottery" that the commissions and compensation earned by Southland Gaming and video lottery retails "are hereby deemed to be 'commissions' within the meaning of" Section 43(a) of Title 33.[6] Section 43(a) exempts "commissions paid for the sale of Virgin Islands Lottery tickets" from the four percent tax on gross receipts otherwise levied on "each individual and every firm, corporation, and other association doing business in the Virgin Islands."[7]

On June 17, 2009, the Government filed its seven-count Complaint. The Government's claims center around two arguments: first, that

---

[4] Act. No. 6583 (July 14, 2003) (amending 32 V.I.C. § 244(a)).

[5] 32 V.I.C. § 247(h).

[6] V.I. CODE ANN. tit. 33, § 43(a) (1994).

[7] *Id.*

Southland Gaming should pay retailers out of the share of revenues it retains for itself, rather than deducting the retailers' commissions from the total net game revenue and, second, that the MLA was invalid because the Director lacked authority to sign it,[8] and so Southland Gaming is responsible for paying a four percent gross receipts tax on its earnings.

Southland responded to the Complaint by filing this Motion to Dismiss, arguing that the Complaint does not present a "case or controversy" capable of judicial resolution. It also stated that no "taxing authority" had ever notified Southland that it was required to pay gross receipts taxes on its lottery commissions. The Internal Revenue Bureau sent a letter on April 6, 2009, inquiring of Southland about the tax issue. After that letter, Southland and IRB held a meeting to discuss the gross receipts taxes. On June 9, 2009, the IRB sent a tax clearance letter to Southland which stated that Southland was "current in the filing and payment of [its] tax obligation."

Southland maintains that the contract permits it to retain its percentage of "net game revenue" without deduction of any costs or expenses, including retailer commissions. It notes that it has complied and has acted according to this understanding for over five years, providing detailed reports each week to the Lottery Commission explaining the allocation of net game revenue, but that, until December 12, 2008, no one ever notified Southland that the Lottery considered it to be in breach of the contract. It highlights the fact that its contract with the Government was renewed for another five-year term in 2008.

On December 12, 2008, Lottery Director Lenyse Shomo contacted Southland, stating that Southland was in breach of its contract and demanding twenty-two million dollars within ninety days. After Southland responded with affidavits to support its interpretation of the contract, Director Shomo sent a letter to Southland on February 20, 2009, rescinding its earlier notice of breach. The letter states that the Lottery "does not consider Southland to be in breach of its contract," and that it would not take any legal action against Southland. After that date, the

---

[8] Specifically, the Complaint states that the MLA is deficient because it does not bear the signatures of the Lottery Commission, the Governor and the Commissioner of the Department of Property and Procurement, and because the Director lacked authority to expand the statutory definition of "commission" as found in Section 43(a) of Title 33.

Lottery continued to accept proceeds from Southland without any further notice of breach or demand for revenue.

## DISCUSSION

### I. JUSTICIABILITY DOCTRINES ARE PRUDENTIAL, RATHER THAN JURISDICTIONAL, PRINCIPLES IN THE VIRGIN ISLANDS' LOCAL COURTS.

Southland asks this Court to dismiss the Complaint for lack of jurisdiction, arguing that the Government has not presented an actual "case or controversy." Because the Court finds that the issues presented are not yet ripe for adjudication, it will grant the Motion to Dismiss.

Southland states that it brings its Motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,[9] which addresses dismissals for lack of subject-matter jurisdiction. As an initial matter, the Court must determine whether the justiciability principles, including standing and ripeness, are jurisdictional or prudential in nature.

The Supreme Court of the Virgin Islands recently addressed this issue. In *Velazquez v. Smith Velazquez*, the court observed that, while certain aspects of the justiciability requirements found in Article III of the U.S. Constitution have been incorporated in Virgin Islands jurisprudence, the local courts are not Article III courts.[10] Therefore, the justiciability doctrines applied by this and other local courts are prudential and not jurisdictional.[11]

Because the justiciability doctrines are judicially created, the Court may exercise its own discretion in determining whether to apply them.[12] In this case, the facts compel a conclusion that the justifications for the ripeness doctrine apply, and therefore, to preserve judicial resources, the Court will apply the doctrine.

---

[9] The Federal Rules of Civil Procedure and the Local Rules of Civil Procedure apply to matters before this Court whenever they are not inconsistent with the Rules of the Superior Court. SUPER. CT. R. 7.

[10] *Vazquez v. Smith Vazquez*, S. Ct. Civ. No. 2008-0108, 2010 V.I. Supreme LEXIS 55, *4-5, n.1 (V.I. Oct. 15, 2010).

[11] *Id.; see also ASARCO v. Kadish*, 490 U.S. 605, 617, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989) (observing that Article III's constraints do not apply to state courts and "accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability.").

[12] *Vazquez*, 2010 V.I. Supreme LEXIS 55, at *4-5, n.1.

## II. STANDARD FOR DECIDING A MOTION TO DISMISS WHICH PRESENTS A RIPENESS CHALLENGE.

█ The ripeness doctrine considers whether a particular controversy presented to the Court is ready for judicial consideration.[13] Its purpose is to "conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems."[14] By refusing to consider cases and controversies that are not yet ripe, the Court avoids "entangling [itself] in abstract disagreements over administrative policies," and protects "the [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way."[15]

█ The Motion to Dismiss raises a factual or substantive challenge, arguing that the facts demonstrate that the issues presented are not yet ripe for adjudication.[16] Because Southland raises a factual challenge, the Court will not presume that the Government's factual allegations are true, the Government retains the burden to prove that the issues presented are ripe, and the Court has the authority to find the facts as they relate to the justiciability claim.[17]

The Government asserts a number of claims in its Complaint. It requests both declaratory relief and damages. In its seven counts, however, the Government raises essentially two questions: first, whether Southland Gaming is subject to the gross receipts tax, and second, whether Southland Gaming is submitting to the Virgin Islands Lottery the correct percentage of video lottery revenues.

Both Southland and the Government have provided factual support — in the form of affidavits and other exhibits — for their positions on the

---

[13] *Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1187, 25 V.I. 226 (D.V.I. 1990).

[14] *Id.* (citing 4 K. Davis, *Administrative Law Treatise*, § 25:1 (1982)).

[15] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967).

[16] *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (distinguishing between a facial challenge, which alleges a pleading deficiency, and a factual or substantive challenge, which "concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" (quoting *U.S. ex rel Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007))).

[17] *CNA*, 535 F.3d at 139; *see also Martinez v. Columbian Emeralds, Inc.*, 51 V.I. 174, 189 (V.I. 2009) (stating that the court is free, in reviewing a Rule 12(b)(1) Motion to Dismiss, to weigh the evidence).

question of justiciability. The Court will examine the evidence to determine whether the Government has met its burden of proving that its Complaint presents an actual case or controversy ripe for adjudication.

## III. THE CLAIMS RELATING TO GROSS RECEIPTS TAXES ARE UN-RIPE.

As discussed above, the ripeness doctrine operates to preserve judicial resources and eliminate judicial entanglement in administrative processes.[18] A more focused version of the ripeness doctrine is the doctrine of exhaustion of administrative remedies.[19] However, the Court's survey of case law did not uncover any cases in which the exhaustion doctrine was made applicable to the Government as a plaintiff.

■ To determine whether a matter should be dismissed on ripeness grounds, the Court considers both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[20]

■■ Fitness may be determined by considering whether an issue may benefit from factual development at the agency level. "When a decision would require extensive factual findings of the sort normally made by an agency in the course of its deliberations, the courts have held the dispute unripe."[21] In this case, the IRB may wish to conduct evidentiary hearings to determine whether the Lottery and the Attorney General, by signing the MLA, intended to exclude from gross receipt taxes proceeds from video lottery terminals.[22] The IRB may wish to find facts relating to any possible estoppel defenses. These facts should first be set out at the agency level, where the IRB can exercise its specific expertise to determine whether Southland is indeed in violation of the tax laws.[23] The

---

[18] *Gen. Offshore Corp.*, 743 F. Supp. at 1187.

[19] *Id.* at 1190.

[20] *Abbott Labs.*, 387 U.S. at 149.

[21] *Gen. Offshore Corp.*, 743 F. Supp. at 1187.

[22] 33 V.I.C. §§ 681(a), (b) (providing the power to IRB to impose gross receipts taxes and enforce and collect the tax revenues owed to the Government).

[23] *The Univ. Of Medicine & Dentistry v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) ("Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise."); *Flavo-Rich v. Quinn*, 18 V.I. 530, 532, 533 (D.V.I. 1981) (refusing to allow a declaratory judgment to become an "end-run around administra-

Court is aware that this matter also presents certain legal issues regarding the validity of the MLA and contract interpretation. However, the presence of some legal issues does nothing to eliminate the preference for the relevant agency to conduct the necessary fact-finding in the first instance.

If the parties would be greatly harmed by deferring a decision on an issue, the courts generally find that the issue is ripe. To succeed on this factor, the plaintiff must generally show that it "is in fact injured by the actions of which" it complains, or that such injury is threatened.[24] The harm alleged must be "immediate and significant."[25] In this case, the Government *alleges* that it is harmed because of Southland's failure to pay gross receipt taxes. However, it has not *shown* that it is truly harmed and that this harm is "immediate and significant." The tax agency responsible for determining whether corporations are in violation of the tax laws provided a tax clearance letter demonstrating that Southland is not in violation of the tax laws.[26] Furthermore, the Government has not shown that, even if its claims are meritorious, the harm alleged by a deferral of a judicial decision would be irreparable. If Southland is found by the IRB to be in arrears of its tax obligations, the amounts due could be obtained through the normal administrative and (if necessary) judicial channels. That determination has not yet occurred. In fact, commencing a judicial process before the IRB has a chance to act on these allegations may deprive Southland of the administrative due process to which it is entitled.[27]

■ The Government's claims to the contrary are unpersuasive. The mere fact that a Complaint was filed is not proof that a ripe case or controversy exists, contrary to the assertions made in the Government's Opposition. If it did, no civil action would ever be dismissed on justiciability grounds. The Government also makes much of the fact that

---

tive channels," which would impair the "efficacy and value of the administrative frame-work").

[24] *Gen. Offshore Corp.*, 743 F. Supp. at 1187.

[25] *Abbott Labs.*, 387 U.S. at 153.

[26] Southland also notes that Section 1661 of Title 33 prohibits the filing of any civil action for the recovery of taxes without the authorization or sanction of the Director of the IRB. The Court does not have sufficient evidence before it to determine if the Director sanctioned or authorized this litigation.

[27] 33 V.I.C. § 45.

the Attorney General is responsible for bringing suits on behalf of the Government.[28] The Court is well aware of this fact. However, that fact that the Attorney General filed a suit does not necessarily mean that the claims he brought are ripe for adjudication.

Therefore, considering both the fitness and hardship factors, the Court finds that the claims relating to gross receipt taxes are not yet ripe and must be dismissed.

## IV. THE CLAIMS RELATING TO THE PERCENT OF LOTTERY PRO-CEEDS RETAINED BY SOUTHLAND ARE UNRIPE.

The Court finds that the claims relating to Southland's retention of lottery proceeds[29] are also unripe. The Government alleges that Southland is incorrectly calculating the portion of the "net game revenue" by deducting retailers' commissions from the total net game revenue before subtracting Southland's proceeds. The Government argues that Southland should be paying the retailers their commissions from Southland's share of the net game revenue, rather than paying them from the total of the net game revenue. Southland counters that its method of calculation complies with its contract.

The Lottery ought to develop the facts necessary to resolve these claims in the first instance and, therefore, the revenue claims are not yet fit for resolution. The Lottery is responsible for managing and administering the lottery, including supervising and regulating Lottery contractors. To decide whether the Government's claims are meritorious, certain facts must be developed, including determining the intent of the parties who negotiated the Southland contract. These facts are better developed by the Lottery before being presented to this Court for judicial resolution.

Furthermore, the Government does not prove that it would suffer hardship — that is, immediate and significant harm — if the Court withheld a decision until the matter is addressed by the Lottery. In fact, the Lottery has notified Southland in the past that it is not in violation of its contract with the Government. The facts available to the Lottery at the time of that determination may be highly relevant to a fair resolution of

---

[28] V.I. CODE ANN. tit. 3, § 114 (1995).

[29] Counts III, IV, V, VI and VII of the Complaint.

the claims presented in the Complaint. Therefore, the revenue claims are not yet ripe and must be dismissed.

## CONCLUSION

Because the Government presents claims which should first be presented to the Lottery Commission and the Internal Revenue Bureau for resolution, they are unripe. To conserve judicial resources and prevent entanglement in administrative processes, therefore, the Court will grant Southland Gaming's Motion to Dismiss, and will dismiss the Government's Complaint without prejudice.