# IN THE MATTER OF THE VIRGIN ISLANDS BAR ASSOCIATION'S PETITION TO AMEND THE BYLAWS OF THE VIRGIN ISLANDS BAR ASSOCIATION

S. Ct. Miscellaneous No. 2013-0035

Supreme Court of the Virgin Islands

December 11, 2013

ERNEST E. MORRIS JR., ESQ., President, Virgin Islands Bar Association, St. Thomas, USVI, *Attorney for Petitioner*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 11, 2013)

PER CURIAM. This matter comes before the Court pursuant to an October 31, 2013 petition filed by the President of the Virgin Islands Bar Association ("VIBA"), which requests that this Court adopt various changes to the Bylaws of the VIBA, including altering its dues structure. For the reasons that follow, we grant the petition, as modified.

## I. BACKGROUND

At its September 25, 2013 Third Quarterly Meeting, the President of the VIBA notified the members in attendance that the VIBA's Board of Governors had approved several changes to the Bylaws. On October 7, 2013, the VIBA published a special edition of the *Virgin Islands Bar Journal*, which stated that nine amendments would be submitted for consideration at a special meeting, scheduled for October 23, 2013, at 5:30 pm at the District Court of the Virgin Islands. The special edition did not mention the possibility of members voting by mail, nor did it specify how the membership would vote on the proposed amendments, i.e., whether all nine amendments would be subject to a single collective vote or be voted upon separately. However, on October 9, 2013, the VIBA, through its Executive Director, Hinda Carbon, sent an email to the membership stating that the special meeting had been rescheduled to

271

12:00 pm on October 23, 2013.[1] The VIBA did not publish a new edition of the *Bar Journal* to reflect the changed meeting time, nor did it distribute any mail-in ballots in advance of the special meeting.

Only 16 members of the VIBA attended the special meeting.[2] At the meeting, the following proposed amendments were submitted for a vote:

### A. Increasing Bar Dues.

Article I of the Bylaws of the Virgin Islands Bar Association Integrated is amended:

1. In section 3 by deleting "$200.00" and inserting "300.00" in its place; and by deleting "$50.00" and inserting "150.00" in its place;
2. In section 5 by deleting "100.00" and inserting "300.00" in its place; and
3. In section 7 by deleting "$150.00" and inserting "300.00" in its place.

### B. Establishing an Official Policy for the Succession of Officers and permitting Electronic Voting.

Article IV of the Bylaws of the Virgin Islands Bar Association Integrated is amended:

1. In the title by adding the words "and Voting";
2. By adding a new section three to read: "In the event the sitting President is unable to exercise and perform the duties assigned to him by these Bylaws and by the Board of Governors and [by] the Chief Executive Officer of the Virgin Islands Bar, the President-elect shall assume the duties of the Presidency for the remainder of the term of the President and shall there-

---

[1] The body of the email reads, in its entirety, as follows:

Dear Members,

On October 23, 2013, there will be a Special Membership meeting at the District Court in both Districts to consider proposed amendments to the Bylaws. Due to the sequestration, the District Court could not accommodate our request to hold the meeting after working hours. Therefore, the meeting will begin at 12 noon. We apologize for any inconvenience caused by the new meeting time.

-Hinda

[2] The Bylaws state that "[f]ifteen (15) active members shall constitute a quorum to transact business at any meeting of the Virgin Islands Bar." V.I. BAR ASS'N BYLAWS § XI.8.

after serve his or her elected term. In the event a member of the Board of Governors or the ABA Delegate is unable to exercise and perform the duties assigned to him or her by these Bylaws and the Board of Governors, the President shall appoint a member to serve in the Member or Delegate's stead for the remainder of his or her elected term. Said appointment shall expire at the remainder of the elected term of the disabled Member or Delegate.";

3. By renumbering the remaining sections accordingly; and

4. In the existing section 3, by striking the word "present", and adding a new sentence to read: "An electronic voting system shall be established and implemented by the Nominating Committee. All members in good standing shall cast their vote by secret paper ballot or by secret electronic ballot."

**C. Establishing additional Guidelines for Use of Scholarship Funds and Eliminating the Maximum Limitation of the Number of Members who may Serve on a Committee.**

Article X of the Bylaws of the Virgin Islands Bar Association Integrated is amended by:

1. Adding a new section 3 to read: "Notwithstanding the limitations set forth herein, the Scholarship Committee may grant donations for purposes other than those listed in subsection 1, subject to the availability of funds."; and

2. Adding the words "at least" after the words "consists of" after all committee designations set forth in bold, except for the **Young Lawyers Committee** designation.

(Pet. Exh. B (emphasis, capitalization, and spelling in original).) The 16 members present voted separately for the "A," "B," and "C" amendments, all of which passed by a majority vote. The special meeting adjourned without any mention or tabulation of mail-in ballots.

The VIBA, through its President, filed a petition for this Court to approve the proposed amendments on October 31, 2013. This Court, in a November 5, 2013 Order, expressed several concerns with the VIBA's petition, and required that the President submit a supplemental brief addressing the following issues:

1. Article XII of the Bylaws provides that "[t]hose absent can vote in writing by mail provided such vote is received prior to

273

the date of the meeting." Additionally, Supreme Court Rule 205(e) provides that "[w]here mailing of ballots is required, the Bar Association shall provide adequate time for distribution and return before the tabulation deadline." Were members of the Virgin Islands Bar Association informed of their right to vote by mail and, if so, how were mail-in ballots distributed and counted?

2. Article XII of the Bylaws requires that notice of a vote on proposed amendments be provided by mail or publication in the Virgin Islands Bar Journal at least 15 days before the meeting. The petition states that the Bar Journal was published on October 7, 2013. But while the Bar Journal states that the meeting would occur at 5:30pm on October 23, 2013, this Court takes judicial notice that on October 9, 2013, the Executive Director published an email to members stating that the meeting would occur at 12:00pm on October 23, 2013. In light of this, has the 15 day notice requirement been met?

3. The proposed amendments would change the dues structure so that all active, inactive, and government members would pay $300.00 in dues. What is the justification for requiring inactive and government members to pay the same dues as active members, given that inactive members cannot practice law and neither inactive nor government members can vote or hold office?

*In re Petition to Amend Bylaws*, S. Ct. Misc. No. 2013-0035, slip op. at 1 (V.I. Nov. 5, 2013) (unpublished). Additionally, since only 16 total members attended the special meeting, as well as the fact that the proposed amendments would raise dues for inactive and government[3] members — who were not

---

[3] The term "government member," as used in the Bylaws, does not refer to an attorney employed by the government, but encompasses "[a]ll attorneys at law who are not active members of the Virgin Islands Bar, but who have been specially admitted to practice law in the Virgin Islands on behalf of the Government of the United States, the Government of the Virgin Islands, Office of the Public Defender, [or] Legal Services of the Virgin Islands. . . ." In other words, a "government member," for purposes of the Bylaws, is simply an attorney who is specially admitted pursuant to Supreme Court Rule 202. Likewise, the term "active member" is intended to refer to those attorneys regularly admitted pursuant to Supreme Court Rule 204. In order to minimize confusion going forward, this Court shall, in addition to the

eligible to vote — this Court found that the interests of justice required notifying all members of the VIBA of the petition, and permitting any member so desiring to electronically file a written response or comments directly with this Court for its consideration. Therefore, this Court directed the Executive Director to transmit copies of the November 5, 2013 Order and the October 31, 2013 petition to all members of the Virgin Islands Bar, with instructions to submit any responses or comments to the petition directly to the Court no later than November 19, 2013 at 11:59 pm. *Id.* at 2.

The President of the VIBA timely filed the supplemental brief on November 12, 2013. Although the November 19, 2013 deadline to file comments on the petition and the issues raised in the November 5, 2013 Order has lapsed, not a single active, inactive, or government member submitted any objections or comments for our consideration.

## II. JURISDICTION

■ This Court, as the highest court of the Virgin Islands, possesses exclusive jurisdiction to regulate the legal profession. V.I. CODE ANN. tit. 4, § 32(e). The VIBA, which has been "created to assist the Court in regulating the practice of law in the territory," is an integrated bar association, meaning that "[a]ll attorneys admitted to practice law in the Supreme Court are required to be members. . . ." V.I.S.CT.R. 205(a). Since this Court has established the VIBA through court rule pursuant to its inherent power to regulate and supervise attorneys within the Virgin Islands, *see In re Rogers*, 57 V.I. 553, 558 (V.I. 2012), it also possesses supervisory authority over the VIBA, including plenary power to approve its Bylaws. V.I.S.CT.R. 205(c)(1).

## III. DISCUSSION

In our November 5, 2013 Order, we expressed concerns over the procedures employed by the VIBA, as well as the effect of the "A" amendments, which if approved would raise dues for all members to $300.00 regardless of their membership status. We address each issue in turn.

---

amendments proposed by the VIBA that we approve through this Opinion, also issue technical amendments to the Bylaws to replace the term "government member" with "specially admitted member" and, where appropriate, the term "active member" with "regular member," to ensure that the Bylaws are consistent with the terminology used in Supreme Court Rules 202, 204, and 206.

## A. The Special Meeting Procedure

As noted above, Article XII of the current Bylaws permits the VIBA to call for a special meeting for the purpose of considering proposed amendments to the Bylaws, provided that notice is provided by mail or publication in the *Virgin Islands Bar Journal* at least 15 days before the meeting. Moreover, Article XII requires that those not present at the special meeting receive the option of voting by mail, and Supreme Court Rule 205(e) expressly vests the VIBA with the responsibility for mailing ballots and ensuring adequate time for distribution and return. This Court, in its November 5, 2013 Order, noted that these requirements may not have been met, given that (1) notice of the changed time of the special meeting was not sent until 14 days before the scheduled date, and was provided through email rather than mail or publication in the Bar Journal; and (2) neither the *Bar Journal* nor any subsequent email mentioned the possibility of voting by mail, and the VIBA never distributed ballots to its active members nor tabulated mail-in ballots at the special meeting.

In his November 12, 2013 brief, the President contends that the procedure the VIBA employed is fully compliant with Article XII and Rule 205(e). First, the President argues that the *Bar Journal* stated that the proposed amendments would be considered pursuant to Article XII, and that "[a]ccordingly, all members were aware that the procedure being employed was pursuant to Article XII of the Bylaws," and that "[t]herefore, all members reasonably should have been aware of the ability to submit their vote by mail if they so desired." (Br. 2.) Additionally, the President notes "that Rule 205(e) . . . applies only to polling," argues that "polling is utilized to get a sampling or collection of opinions on a subject," and asserts that "[t]he vote of the membership at a special meeting on proposed amendments to the bylaws is not a poll . . . ." (Br. 2-3.) Finally, the President states that the change in the meeting time from 5:30 pm to 12:00 pm did not restart the 15 day notice period, given that the October 23, 2013 date remained the same, and that the time change had been beyond the VIBA's control.

▮▮▮ We disagree. As a threshold matter, we reject the claim that Rule 205(e) applies solely to random sampling of members. While the President is correct that one of the definitions of the word "poll" is "[a] sampling of opinions on a given topic," the alternate, and perhaps more common, meanings of the word are "[t]he act or process of voting at an

election," "[t]he result of the counting of votes," and "[t]he place where votes are cast." BLACK'S LAW DICTIONARY 1277 (9th ed. 2009). Rule 205(e), when read in its full context, unquestionably applies to membership votes, rather than random samplings or opinions:

> Whenever the business of the Bar Association requires polling of the membership, active members of the Bar Association in good standing shall be permitted *to vote* regardless of where in the territory *the polling* is being tabulated. Toward this end, the Bar Association shall take appropriate measures to ensure *the casting of ballots* by all eligible members. Where mailing of *ballots* is required, the Bar Association shall provide adequate time for distribution and return before the tabulation deadline. The Bar shall provide for appropriate record keeping and storage of all polling information, ballots, results, etc.

V.I.S.CT.R. 205(e) (emphases added). *See also* BLACK'S LAW DICTIONARY 163 (defining a "ballot" as "[a]n instrument . . . used for casting a vote"). Therefore, the Rule 205(e) procedure clearly applies to a membership vote to amend the Bylaws, and thus the VIBA was required to distribute ballots to its active members.

■ Likewise, while the *Bar Journal* did mention Article XII, that reference, without more, cannot put the entire membership on notice of their opportunity to vote by mail. Importantly, the *Bar Journal* did not specify the precise procedure for considering the nine proposed amendments. The membership could have voted on all nine proposals separately, or on all nine as a slate. It is possible that even more than nine votes could have occurred. For example, Proposed Amendment A.1 would make two separate, unrelated amendments to section 3 of Article I, by raising dues for active members from $200.00 to $300.00 and raising dues for newly admitted members from $50.00 to $150.00, each of which could have been voted upon separately. Ultimately, the members voted on three proposed amendments packaged as "A," four amendments labelled "B," and an additional two amendments designated as "C." Since the Bar Journal did not explain how the vote would proceed, and the VIBA did not provide its members with ballots, it was simply not possible for members to produce their own ballots.

■ We also disagree that the change of meeting time from 5:30pm to 12:00pm can simply be disregarded. Such a change in meeting time is

significant, given that the meeting was rescheduled from after normal business hours to the middle of the workday, and thus may have adversely affected attendance. And while we are sympathetic with the President's argument that the October 9, 2013 email still provided members with 14 days' notice, we note that notice of the changed meeting time was provided through a different medium than the original notice. Pursuant to Article XII, notice of a vote on proposed changes to the Bylaws must be provided at least 15 days "either by mail or publication in the Virgin Islands Bar Journal." This Court takes judicial notice of the VIBA's 2013 Membership Directory, which reflects that numerous active members have not submitted their email address to the VIBA. Notably, VIBA members are not required to provide the VIBA with their email addresses.[4] V.I. BAR ASS'N BYLAWS § I.2 (only requiring members to notify the VIBA of "their residence or office addresses"). Thus, by providing notice of the 5:30 pm meeting time through the Bar Journal, but only providing notice of the new 12:00 pm meeting time through email, it is possible that not all active members were aware that the meeting time had changed.

 Nevertheless, despite our holding that the VIBA failed to comply with Supreme Court Rule 205(e) and Article XII of its Bylaws, we decline to deny the petition on those grounds. As we have previously explained, this Court may, for sufficient cause, waive application of any of its own bar regulation rules. *See, e.g., In re Application of Shores*, 59 V.I. 994, 997 (V.I. 2013); *In re Admission of Alvis*, 54 V.I. 408, 416 (V.I. 2010); *In re Application of Payton*, S. Ct. BA. No. 2007-0146, 2009 V.I. Supreme LEXIS 17, *9 (V.I. Mar. 20, 2009) (unpublished). In our November 5, 2013 Order, we raised these procedural issues *sua sponte*, invited any member of the VIBA so desiring to address these and any other issues relating to the VIBA's petition directly with this Court, and provided explicit instructions as to how to file a comment with this Court. Moreover, we directed the Executive Director of the VIBA to serve a copy of the November 5, 2013 Order on all members of the VIBA, which was

---

[4] Pursuant to Supreme Court Rule 40.2(b), all active members of the VIBA must either register as Filing Users with the Virgin Islands Supreme Court Electronic Filing System ("VISCEFS"), which entails that they provide this Court with a valid email address, or attain an exemption. However, this Court does not share the information in VISCEFS with the VIBA, and has never imposed a requirement that attorneys submit their email addresses to the VIBA.

done on November 6, 2013. Despite this generous comment period — which is not mandated by the Bylaws or this Court's rules — not a single member filed a comment, let alone expressed opposition to the petition. Consequently, while the VIBA did not afford its members with the procedural protections set forth in Rule 205(e) and Article XII, we find that the members of the VIBA, by failing to assert these provisions or otherwise challenge the VIBA's actions, despite having the opportunity to do so, have unanimously waived application of these provisions and assented to the procedures employed by the VIBA. *Cf. Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010) (deciding that the thirty-day requirement to file a notice of appeal found in Rule 5 is not jurisdictional and may be waived by a party's failure to raise the timeliness issue).

## B. The Dues Increases

■ Having determined that the VIBA membership waived any objection to the procedure used to vote on the proposed Bylaw amendments, we now consider whether to adopt the suggested changes. Upon our review, we find no reason not to accept the amendments grouped as "B" and "C." We also partially adopt the first clause of Proposed Amendment A.1, which would raise dues for active members from $200.00 to $300.00. While the VIBA's justification for increasing dues for its active members is less detailed than its submission when it last requested a dues increase in 2007,[5] we cannot ignore that the Board of Governors and the active members themselves, by majority vote of those present at the October 23, 2013 meeting, voted in favor of the dues increase. And while only 16 members attended that meeting, we cannot ignore that not a single member filed an opposition to the VIBA's petition with this Court, and that the Bylaws provide a mechanism for active members to reconsider the dues increase if they so choose upon their own initiative. V.I. BAR ASS'N BYLAWS § XI. Therefore, although we are empowered to do so, we decline to substitute our own judgment for the VIBA's Board of Governors and its active members, a majority of who voted in support of raising their own dues.

---

[5] See *In re Petition for Approval of Change in Annual Dues Structure*, S. Ct. BA. No. 2007-0024, slip op. at 2-6 (V.I. Mar. 20, 2007) (summarizing, and agreeing with, the factual basis set forth in the VIBA's petition to increase dues for 2008 membership year).

The remainder of the "A" amendments, however, warrant additional scrutiny from this Court. Proposed Amendments A.2 and A.3 would double the dues for government members and triple the dues for inactive members, two groups that the existing Bylaws preclude from serving on the Board of Governors and from voting, including on the proposed amendments.[6] *See* V.I. BAR ASS'N BYLAWS § I.4 ("Government members shall not have the right to vote or hold office . . . ."); V.I. BAR ASS'N BYLAWS § I.6 ("Inactive members shall not have the right to vote or hold office . . . ."). Moreover, the second clause of Proposed Amendment A.1 would triple dues for future newly admitted attorneys, who, because they are not yet members of the VIBA, also had no say in the matter. While we have chosen to defer to the judgment of the active members to raise their own dues, we decline to apply this same deferential standard to the active members' decision to raise dues for inactive, government, and newly admitted members.

■ Although an integrated bar association acts as an arm of the Judicial Branch, it is not a government agency. *Keller v. State Bar of Cal.*, 496 U.S. 1, 12-13, 110 S. Ct. 2228, 110 L. Ed. 2d 1 (1990). Nevertheless, because membership — and, consequently, payment of dues — is compulsory to practice law, an integrated bar association may only assess dues for purposes germane to its regulatory function. *Id.* at 15-16; *Kingstad v. State Bar of Wisc.*, 622 F.3d 708, 718 (7th Cir. 2010); *Romero v. Colegio de Abogados de P.R.*, 204 F.3d 291, 300 (1st Cir. 2000) (unconstitutional for bar association to assess dues to pay for compulsory life insurance). The President, recognizing these principles, primarily justifies raising dues for inactive and government members to $300.00 — the same rate as for active members — on the grounds that "inactive and government attorneys utilize and benefit from all Bar operations and activities."[7] (Br. 5.) Specifically, the President states that

---

[6] In his supplemental brief, the President states that this Court's November 5, 2013 Order was mistaken, in that "[t]here is no prohibition in the Bylaws against inactive members voting or holding office." (Br. 6.) However, as noted above, section 1(6) of Article I expressly prohibits inactive members from voting or serving on the Board of Governors.

[7] In his brief, the President also argues that higher dues for inactive and government members are justified because "inactive and government members are not subject to the mandatory criminal appointments to which all active attorneys are subject." (Br. 6.) As a threshold matter, we note that while all attorneys must remain willing to take such appointments, the pertinent court rules and statutes provide for appointment of the Office of the Territorial Public

The Bar office must verify CLE compliance and the payment of Bar dues for all members who transition from active to inactive status, and vice versa. The Bar office must make all the same verifications for inactive members and government members who request certificates of good standing and CLE extensions, who face [unauthorized practice of law] or Ethics and Grievance proceedings, who withdrew from the VI Bar, and a host of other actions before the Supreme Court of the Virgin Islands. These necessary services take up a substantial amount of limited Bar resources. Virtually all of the benefits of membership, including affordable Continuing Legal Education (which has even been offered at a discounted rate to government attorneys), membership discounts (including Office Max, West LegalEd Center, and the American Bar Association Books for Bars Program), membership directories, etc., are available to active members and inactive members and government members alike.

(Br. 5-6.)

 We disagree that these activities warrant such a substantial dues increase for inactive and government members. First, we note that bar dues do not fund attorney discipline proceedings; the activities of the Ethics and Grievance Committee are funded exclusively from the Judicial Council Imprest Account,[8] *see* 4 V.I.C. § 442(c), supplemented by any costs that may be assessed and recovered against attorneys who are

---

Defender — whose members would constitute government attorneys if specially admitted — and, if a conflict exists that precludes the Public Defender's representation, an appointment from a panel of attorneys. *See* V.I.S.CT.R. 210.1, 210.3(b); 5 V.I.C. § 3503(a). In any event, the VIBA has failed to demonstrate any connection between the proposed dues increase and criminal appointments, since the VIBA has made absolutely no representation that the higher dues will be used to supplement the rates paid to court-appointed counsel, fund an additional position at the Public Defender's Office, or any activity directly related to funding the indigent criminal defense system in the Virgin Islands. Rather, it is clear from the VIBA's filings that the higher dues will simply allow it to maintain its current level of services.

[8] We note that the special edition of the Bar Journal represented that "[t]he Board of Governors is also working . . . to advance legislation to eliminate the licensing fees that attorneys must pay to the V.I. Department of Licensing [and] Consumer Affairs," (*Bar J.* 2), which is the very same licensing fee that funds the Judicial Council Imprest Account. However, the *Bar Journal*, the VIBA's petition, and the President's supplemental brief all represent that the $300.00 across-the-board dues increase is intended to fund the VIBA's current obligations, and make no mention of the higher dues being used to pay for the activities of the Ethics and Grievance Committee in the event the licensing fee is eliminated.

281

disciplined, while the Office of Disciplinary Counsel — which, effective July 2011, exercises all ministerial, investigative, and prosecutorial functions with respect to disciplinary matters — is wholly funded by this Court. Additionally, inactive members are not subject to mandatory continuing legal education requirements, *see* V.I.S.Ct.R. 208(b)(1) (limiting mandatory continuing legal education to active members), and thus there is no administrative burden associated with ensuring their compliance with Supreme Court Rule 208. Moreover, government and inactive members are by definition not engaged in the private practice of law in the Virgin Islands, and thus are not likely to take advantage of the VIBA's membership discounts. *Cf. V.I. Bar Ass'n v. Gov't of the V.I.*, 648 F.Supp. 170, 182 (D.V.I. 1986) (rejecting First Amendment challenge to VIBA sponsorship of social events when the activities were "largely self-supporting" and received little or no funding from bar dues, thus "reduc[ing] the extent to which [a non-participating attorney] is forced to support activities in which she may not fully participate.").

We are sympathetic to the President's contention that the VIBA must expend resources responding to requests for certificates of good standing from inactive and government members, petitions to switch to and from inactive status, and — in the case of government members — motions for extension of time to complete continuing legal education requirements or to file certifications of compliance with Supreme Court Rule 208. We disagree, however, that these activities "take up a substantial amount of limited Bar resources." (Br. 5.) The VIBA must maintain records of dues payments and continuing legal education compliance regardless of whether an attorney requests a certificate of good standing or files a petition for inactive status. And while these activities may pose some burden, in that the VIBA's Executive Director must review members' filings, conduct an internal record search, and file a response with this Court, we note that the Executive Director's workload has decreased in other areas, since in July 2011, all ministerial functions relating to the Ethics and Grievance Committee — including maintenance of all records — were transferred from the VIBA's Executive Director to the newly-established Office of Disciplinary Counsel. Moreover, any burden imposed on the VIBA by these requests could be addressed in a more narrowly tailored way than an across-the-board dues increase, such as by requiring payment of a fee whenever a member makes such a request. In fact, Promulgation Order No. 2013-0002, issued by this Court on October

24, 2013, amends Supreme Court Rule 208 to impose such fees — payable to both the Government of the Virgin Islands and to the VIBA — for continuing legal education motions.

We recognize, however, that some justification exists for raising dues for government members. Inactive status does not provide any tangible benefits to a member, since an inactive member may not practice law in the Virgin Islands. Rather, the clear purpose of inactive membership is to allow attorneys who have retired, left the territory, or chosen a different career path to still maintain a connection with the Virgin Islands legal community by paying reduced dues and, if they so desire, resume the practice of law at some future date without having to retake the Virgin Islands Bar Examination. In contrast, government members possess a restricted right to practice law, *see Payton*, 2009 V.I. Supreme LEXIS 17 at *5, and thus, while they are less likely to draw upon the VIBA and its resources than active members, they are more likely to do so than inactive members. Therefore, while increasing dues for government attorneys to $300.00 — the same rate as active members, who may vote, hold office, and practice law without restriction — may be excessive, we agree that some increase is warranted.

We also possess concerns about tripling the dues assessed against newly admitted active members of the VIBA. Given that we have approved the increase of dues for active members from $200.00 to $300.00, a corresponding increase in dues for newly admitted active members is also warranted. However, this Court takes judicial notice that its practice has been to conduct two swearing-in ceremonies each year: one in May, and one in November. Since the current $50.00 rate for newly admitted members represents 25 percent of the current $200.00 active member rate, requiring attorneys admitted at the November ceremony to pay this amount is not grossly disproportionate. Yet increasing dues to $150.00 — 50 percent of the new $300.00 active member rate — may pose a greater hardship for attorneys who take the oath in November, since pursuant to Article VIII.7 of the Bylaws, the Treasurer of the VIBA must send invoices for the following membership year by November 30. Thus, if we were to accept the proposed amendment without modification, attorneys admitted in November would effectively pay $450.00 in dues shortly after their swearing-in, representing $150.00 for the remaining

two months — or less[9] — of the current year, and $300.00 for the following year. And even with respect to attorneys admitted in May, the VIBA has made absolutely no showing that newly admitted attorneys rely on its services to such an extent as to warrant tripling their dues.

For these reasons, we reject, in its entirety, Proposed Amendment A.2, and therefore allow dues for inactive members to remain at $150.00. We modify Proposed Amendment A.3 to increase dues for government members to $225.00 instead of the proposed $300.00, so that the existing ratio between active member dues and government member dues remains largely the same. Similarly, we modify the second clause of Proposed Amendment A.1 to require newly admitted attorneys to pay $75.00 in bar dues, which would also maintain the existing ratio between active member dues and newly admitted member dues.

## IV. CONCLUSION

For the foregoing reasons, this Court approves the six amendments designated as "B" and "C" without substantive modification, rejects Proposed Amendment A.2 in its entirety, and accepts, as modified, Proposed Amendments A.1 and A.3. The Bylaws, as amended, shall go into effect on January 1, 2014, and shall be distributed to all members of the VIBA along with this Opinion.

---

[9] For instance, this Court conducted its most recent swearing-in on November 22, 2013.