## STATE v. EARTHIA B. WILEY.

108 N. W. (2d) 774.

April 21, 1961—No. 38,368.

*Earthia B. Wiley,* pro se, for appellant.

NELSON, JUSTICE.

Relator petitions for writ of mandamus to compel the District Court of Sherburne County to order the clerk thereof to prepare at the expense of the county copies of the records in a habeas corpus proceeding wherein the writ was denied after a hearing. Relator states he has taken an appeal from said denial although no such appeal is on file in this court. Relator also petitions for writ of mandamus to compel the District Court of Hennepin County to furnish defendant counsel at county expense to prepare his appeal from an order of that court in coram nobis proceedings; and to furnish transcript of the evidence in the original criminal case at county expense. In a letter to the clerk of this court defendant states that the writ of error coram nobis has neither been granted nor denied by the district court. There is no appeal on file in this court from any order in the coram nobis proceeding. The only appeal in this court is from the judgment of conviction which was entered in the District Court of Hennepin County on March 11, 1959.

Relator was arraigned before the District Court of Hennepin County on December 31, 1958, on a charge of robbery in the second degree and entered a plea of not guilty. On January 5, 1959, he appeared before the Honorable Rolf Fosseen at which time the assistant county attorney stated that relator desired to withdraw his plea of not guilty and to plead guilty as charged. Relator stated that he had his own counsel but that he had understood the matter would be heard on January 6 and was not then present in the courtroom. The hearing was continued to the next day, when the same procedure was repeated. The matter was again continued to January 7, 1959, at which time Richard

Hunegs appeared as his counsel and stated that relator was going to withdraw his plea of not guilty and enter a plea of guilty. Relator was asked directly whether this was his wish and he replied in the affirmative. He was sworn and questioned as to his knowledge and understanding of his rights as a defendant under criminal procedure and of the consequences of pleading guilty. The court then asked defendant if there were any questions and his counsel replied in the negative, requesting that the matter be referred to the Department of Court Services for presentence investigation. The court so ordered.

Relator reappeared before the court on February 17, 1959, represented by the same counsel. The state moved for sentence. Relator was again sworn and questioned by the court, after which the court said that in view of statements made by relator the court was not inclined at the time to accept his plea of guilty to second-degree robbery. After discussion between relator and his counsel, the guilty plea theretofore entered was withdrawn and a plea of not guilty entered. Waiving jury trial, relator was tried before the court March 9, 1959, and found guilty. He reappeared, with Samuel Saliterman as counsel, on March 11, 1959, for sentence. He was again examined by the court and was permitted to address the court before pronouncement of sentence. Mr. Saliterman addressed the court at length in relator's behalf. Having been 20 years of age at the time of apprehension, relator was committed to the Youth Conservation Commission for an indeterminate term and is now detained at the Reformatory for Men in St. Cloud.

No appeal was taken from the robbery conviction within the statutory period. By numerous letters addressed to this court and to its clerk, commencing some 10 months after relator's conviction, relator has tried to obtain a review of his conviction even though he has repeatedly been informed by the clerk of the time limit within which an appeal from a judgment of conviction must be perfected.

On January 13, 1960, relator wrote to the clerk:

"I am initiating legal procedures persuant to attempting to obtain a new trial of my case * * *."

On May 11, 1960, relator sent a letter and a document he termed a "Writ of Error-Notice of Appeal" directly to the chief justice. The

clerk again informed relator that the 6-month period in which to appeal from the judgment of conviction had expired.

On May 30, 1960, relator sent the chief justice a "Motion for Review of Decision," requesting review of an order of the District Court of Hennepin County denying and dismissing an application for a transcript of his trial because the time for appeal had expired. Relator alleged in this motion that prior to expiration of the statutory period for appeal he had prepared a "Writ of Habeas Corpus (Coram Nobis)," but that it has been lost; that 2 months later he gave to his attorneys another "Writ of Coram Nobis," dated October 14, 1959, to be filed with the District Court of Hennepin County but that he had heard nothing from it. In this motion he asked that a writ of mandamus be issued to compel the Hennepin County District Court to furnish the portions of a trial transcript "necessary for preparation of a formal appeal."

On October 27, 1960, he petitioned this court to permit the filing of an appeal without payment of filing fees to obtain review of an order entered by the District Court of Sherburne County discharging a writ of habeas corpus theretofore obtained by relator.

On November 1, 1960, the clerk wrote relator as to affidavits required before his petition of October 27, 1960, could be considered.

On November 3, 1960, relator wrote the clerk for information on how to appeal from a denial of a writ of habeas corpus and how to obtain a transcript of the hearing without charge.

On November 7, 1960, the clerk again notified relator of the time requirement which applies to appeals and also informed him that habeas corpus was a civil proceeding and provided no basis for obtaining a free transcript.

On November 3, 1960, relator sent this court a "Request for Court Order to Amend defective Return to Writ of Habeas Corpus," in which he sought an order directed to the warden of the reformatory to produce and deliver complete minutes of the record of his trial, which apparently had been incorporated into the return made by the warden in the habeas corpus proceeding.

In December 1960 relator applied to this court for a writ of mandamus to compel the District Court of Hennepin County to grant a new

trial. He also filed with the clerk of Hennepin County District Court a "Notice of Appeal Writ of Error Coram Nobis" which stated that he will take appeal from the court's judgment of conviction.

Relator on January 19, 1961, wrote to the clerk for information as to the type of paper to be used in writing his appeal, which was promptly answered. On January 22, relator wrote the clerk for a copy of Minn. St. c. 605 and for a copy of an opinion of this court. The clerk replied January 30, again informing relator as to time requirements on appeal and advising him that the requested copy of the statutes could not be furnished by the clerk's office. Relator replied that the time requirements did not apply to him because he was now applying for a writ of coram nobis. The clerk, February 15, 1961, advised relator that his present appeal now on file with the clerk of the Hennepin County District Court is from the judgment of conviction entered in that court.

Since the time for appeal from the judgment of conviction has long since expired, it would be a needless expense to order a free transcript at this time or to provide for the services of a court-appointed attorney.

The evidence indicates that relator was 21 years of age at the time of his trial and conviction; that he is a high school graduate and had taken some extension courses at the University of Minnesota in advanced Spanish; that besides speaking English he could speak Spanish and French fluently and had some conversational knowledge of Portuguese, Italian, and a little German; that languages were a hobby; and that other hobbies were reading and writing.

The following questions and answers are taken from the court's questioning of relator before his withdrawal of the plea of guilty:

"Q   This particular offense with which you are charged was committed on December 17, 1958, in the city of Minneapolis, Hennepin County, Minnesota, is that right?

"A   Yes.

"Q   You and one James Joseph Duffy stole from the possession of Rose Herman the sum of $60.00, is that right?

"A   Yes.

"Q   And the $60.00 was the property of Abraham Herman doing

business as Herman's Food Market. About what time of the day or night was that?

"A   It was the early part of the night. I don't know the exact time.

"Q   About what time?

"A   About 8:30, something like that.

\*    \*    \*    \*    \*

"Q   You knew he was going in to rob the place, did you not?

"A   Yes, at that time I did.

"Q   That is, before he went in you had some conversation with him respecting his robbing the place?

"A   He had already robbed another place.

"Q   And he had a gun with him, did he?

"A   Yes, he did.

"Q   Was it loaded?

"A   I don't know.

"Q   You waited in the car while he went into Herman's?

"A   Yes.

\*    \*    \*    \*    \*

"Q   You were just sitting in the car?

"A   Yes.

\*    \*    \*    \*    \*

"Q   Then you claim that you didn't participate in this robbery, is that it?

"A   Well, I didn't play an active part. I mean, I had knowledge that he was going to commit the crime.

"Q   Well, were you giving him moral support if not actual support? Do you understand what I mean by that?

"A   Yes, I do.

"Q   Did you encourage him to do it?

"A   No, I didn't encourage him.

"Q   Did you discourage him to do it?

"A   Well, I tried to but he told me I wouldn't have anything to do with it, you know. He told me that—he said he was the one who was going in there to get the money and everything, I wouldn't have anything to do with it.

"Q   Did you participate in the $60.00 that was taken?

"A  Well, he gave me some money later on that evening.

"Q  What was that money from, if you know?

"A  I presumed it was from the robberies. I don't know.

"Q  From the robberies, several of them?

"A  Because he had committed four others.

"Q  Prior to that time?

"A  Yes.

"Q  And you were with him on each of those?

"A  No.

"Q  How many were you with him on?

"A  Well, I was only with him on two robberies.

"Q  Two, one before this particular one?

"A  Yes, * * *.

                    *    *    *    *    *

"Q  But you waited in the car and then later on you took or shared in some of the money?

"A  Yes, he asked me if I wanted some of the money.

"Q  What did you say?

"A  Well, I told him yes.

"Q  So you took some of the money then?

"A  (Nods head.)"

Relator in his petitions states that he is an indigent prisoner at the Minnesota Reformatory for Men and does not have the pecuniary means to retain an attorney to aid him in preparing necessary legal drafts and arguments for review under Minn. St. c. 605; that he does not possess a stenographic copy of his trial transcript, court records, judgment roll, synopsis of testimony, nor does he have legal texts or research material. He cites Minn. St. 611.07 as controlling in regard to the assistance prayed for in his petitions.

The record indicates that the public defender was appointed to represent relator when he was arraigned. When the case was to be heard, relator advised the court that arrangements had been made for his representation by private defense counsel, retained by his mother, who assisted him throughout the trial. In relator's motion for appointment of counsel he makes lengthy charges against his trial counsel

and alleges generally that their representation was less than casual and perfunctory; that because of deliberate incompetence on their part the trial amounted to no more than a sham and a pretense; that they misled him into waiving jury trial and proceeding to trial before the court; and that the conviction arose out of the fact that relator was ignorant of his legal and constitutional rights, of which his counsel failed to properly advise him. He claims that he was called to the witness stand by the state in a peremptory manner and had no choice but to take the stand because no one advised him of his right not to testify; that he was ignorant of constitutional guarantees against self-incrimination and of court procedure generally; and that his attorneys deliberately compromised his rights by permitting a spurious statement to be placed in evidence without objection.

The sufficiency of the evidence to establish the guilt of the relator can only be raised by an appeal or writ of error. State ex rel. Hansen v. Utecht, 230 Minn. 579, 40 N. W. (2d) 441. Relator was not deprived of assistance of counsel nor of the benefits of the due process clause by reason of mistakes of his counsel in the trial of his case. Shaw v. Utecht, 232 Minn. 82, 43 N. W. (2d) 781. This court has held that denial of the constitutional right to a public trial, where the accused enjoys the benefit of competent counsel at every stage of the proceeding, does not ipso facto violate the due process clause so as to deprive the court of jurisdiction to proceed and thereby render its judgment void and subject to collateral attack in a habeas corpus proceeding. State ex rel. Baker v. Utecht, 221 Minn. 145, 21 N. W. (2d) 328, certiorari denied, 327 U. S. 810, 66 S. Ct. 971, 90 L. ed. 1034; dismissal of subsequent application for a writ of habeas corpus in United States District Court (D. Minn.) affirmed, Baker v. Utecht (8 Cir.) 161 F. (2d) 304, certiorari denied, 332 U. S. 831, 68 S. Ct. 201, 92 L. ed. 405, rehearing denied, 332 U. S. 845, 68 S. Ct. 264, 92 L. ed. 416.

In State ex rel. Baker v. Utecht, 218 Minn. 553, 16 N. W. (2d) 750, defendant applied to this court for assignment of counsel to represent him on his appeal from an order discharging a writ of habeas corpus he had theretofore obtained. Mr. Chief Justice Loring speaking for this court said in that case (218 Minn. 555, 16 N. W. [2d] 752):

"There is no statute in this state which authorizes this court to assign counsel in such cases or to compensate counsel for such services. In the district court, in criminal proceedings by indictment or information, such counsel may be provided and compensated. * * * In a suitable case, in the exercise of our discretion, we might ask a member of our bar to appear for relator and to conduct his proceedings for him, but such action is wholly within our discretion. In the proceeding at bar, the request for counsel, on its face, shows that the grounds of appeal are: (1) That there was no competent evidence of guilt; and (2) that defendant was denied a public trial. * * * Moreover, it appears on the face of the application that the district court had jurisdiction of the relator and of the offense charged against him in that court. In the absence of extraordinary circumstances making the trial a mere sham or pretense rather than a real judicial proceeding, *habeas corpus* will not lie on the ground that the judgment is a nullity for want of due process even where, as here, there is a claim of denial of constitutional rights. Goto v. Lane, 265 U. S. 393, 44 S. Ct. 525, 68 L. ed. 1070, and State ex rel. Dunlap v. Utecht, 206 Minn. 41, 287 N. W. 229, *supra*. This, together with what has already been said, demonstrates that on the face of the application for counsel the appeal is frivolous."

The court there held that the proceedings in which the relator was participating were no part of the criminal action, but were in fact proceedings in opposition thereto. The same is true in this case.

■ Minn. St. 611.07 deals with how, when, and under what circumstances an indigent prisoner appealing from conviction may obtain a trial transcript at the expense of the county where he was convicted. The same statute also provides that when counsel appointed for an indigent defendant appeals or procures a writ of error this court, upon determining that the defendant is unable to pay his counsel and that review was sought in good faith and upon reasonable grounds, may order payment of counsel fees by the county in which the defendant was accused. Relator's petitions now before the court not being part of the original criminal proceedings in which he was convicted, § 611.07, which has application only to criminal cases, does not apply in this

proceeding. See, State v. Dahlgren, 259 Minn. 307, 107 N. W. (2d) 299.

We have reviewed all of relator's petitions and voluminous letters now in the files, as well as the transcript of the proceedings before the Hennepin County District Court after arraignment preliminary to trial, including the court's questioning of relator on that occasion, and the sentencing. While relator attempts to claim errors at his trial, his petition wholly fails to present a single allegation which goes to the jurisdiction of the trial court. The grounds urged for the issuance of writs herein could not be raised at this time by habeas corpus nor will they support a petition for a writ of mandamus. Consideration leads us to the conclusion that relator's petitions are late as well as sham and frivolous and that the petitions for writs of mandamus and accompanying motion must be in all things denied and the attempted appeal from judgment of conviction dismissed.

Petitions denied. Appeal dismissed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.