**ANGEL RODRIGUEZ, Appellant/Petitioner**

**v.**

**BUREAU OF CORRECTIONS et al., Appellees/Respondents**

Consolidated Cases: S. Ct. Civ. No. 2008-0028; S. Ct. Crim. No. 2008-0075

Supreme Court of the Virgin Islands

April 29, 2013

ANGEL RODRIGUEZ, Inmate, *Pro se*.

KAREN C. MCDOWELL, ESQ., Assistant Attorney General, St. Thomas, USVI, BERNARD VANSLUYTMAN, Solicitor General, St. Thomas, USVI, *Attorneys for Appellees*.

HODGE, *Chief Justice*; SWAN, *Associate Justice*; MOORE, *Designated Justice*[1]. HODGE, *Chief Justice*, concurring.

### OPINION OF THE COURT

(April 29, 2013)

SWAN, *Associate Justice*. Appellant, Angel Rodriguez, appeals the Superior Court's Order of February 27, 2008, which denied his Motion for a New Trial and denied his Motion for Reconsideration of a Superior Court Order denying his Petition for a Writ of Habeas Corpus. For a

---

[1] Associate Justice Maria M. Cabret is recused from this matter. The Honorable Thomas K. Moore has been designated to sit in her place pursuant to title 4, section 24(a) of the Virgin Islands Code.

myriad of reasons, Rodriguez seeks relief from his life sentence without parole for a conviction of First Degree Murder and relief from his conviction for Possession of an Unlicensed Firearm During the Commission of a Crime of Violence. Because we conclude that the Superior Court was correct in denying Rodriguez's motions and Rodriguez's Petition for Writ of Habeas Corpus, we affirm its June 29, 2007 and its February 27, 2008 Orders.

## I. FACTS AND PROCEDURAL HISTORY

The facts that led to Rodriguez's convictions are as follows: On August 9, 1987, Rodriguez shot and killed Rafael Velez near a housing project on St. Croix. (J.A. at 75.) Apparently, Velez had been in the area of the project threatening to kill an unspecified person. (J.A. at 115-116.) When Rodriguez arrived on the scene in a vehicle, Velez approached the vehicle and belligerently stated that he was going to kill someone. (J.A. at 121.) Rodriguez proceeded to shoot Velez in the chest. (J.A. at 146.) According to eyewitnesses who testified at the trial, Velez had no weapon. (J.A. at 83.) After being shot, Velez fled the scene, with Rodriguez in relentless pursuit. (J.A. at 83.) Eventually, Velez fell to the ground. Rodriguez proceeded to callously shoot Velez three more times as he lay defenseless on the ground. (J.A. at 252.) Rodriguez immediately gave his firearm to a friend, Ishmael Christian, instructing him to hide it. (J.A. at 124, 126.) After Rodriguez and Christian departed the scene, Christian went home and hid the firearm in his backyard. (J.A. at 127.)

Subsequently, Rodriguez and Christian were apprehended by the police and both were charged in a multi-count Information with aiding and abetting each other in committing First Degree Murder and various other crimes. (J.A. at 595-97.) Later, the charges against them were severed. Thereafter, Rodriguez was charged separately with First Degree Murder in violation of title 14, sections 922(a)(1) and 11 of the Virgin Islands Code and Possession of an Unlicensed Firearm During the Commission of a Crime of Violence in violation of title 14, sections 2253(a) and 11 of the Virgin Islands Code. (J.A. at 6.) A jury trial was conducted in the District Court of the Virgin Islands ("District Court")[2] at which several

---

[2] At the time of Rodriguez's case, the District Court of Virgin Islands served as a local, or territorial court when hearing cases based on local law. *See Parrott v. Gov't of the V.I.,*

witnesses testified on behalf of the People of the Virgin Islands ("People") and on behalf of Rodriguez. (J.A. at 13.) On October 21, 1987, the jury adjudged Rodriguez guilty of both crimes. (J.A. at 516-17.) The District Court entered its Judgment and Commitment on October 22, 1987. (J.A. at 523-24.)

On October 27, 1987, Rodriguez appealed his convictions to the United States Court of Appeals for the Third Circuit ("Third Circuit"),[3] which affirmed his convictions and the Judgment of the District Court on May 2, 1988. (J.A. at 526.) On September 8, 2005, more than seventeen years later, Rodriguez filed a Petition for a Writ of Habeas Corpus in the Superior Court of the Virgin Islands. The Petition was denied by the Superior Court on June 29, 2007. (J.A. at 557-94, 530-33.) On February 15, 2008, Rodriguez filed both a Motion to Reconsider the denial of the Petition and a Motion for a New Trial. (J.A. at 551-56.) In an Order dated February 27, 2008, the Superior Court denied the Motion for a New Trial as untimely and denied the Motion for Reconsideration because of a lack of specific allegations or a basis for reconsideration of its order. (J.A. at 524.) Rodriguez timely appealed the February 27, 2008 Order. (J.A. at 540-41.)

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011); *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). "An order denying a petition for a writ of habeas corpus is a final order . . . from which an appeal may lie." *Suarez v. Gov't of the V.I.*, 56 V.I. 754, 759 (V.I.

---

230 F.3d 615, 619-20, 43 V.I. 277 (3d Cir. 2000). However, on October 1, 1991, the Virgin Islands Territorial Court, now named the Superior Court, was granted original jurisdiction over all local matters pursuant to the Revised Organic Act of 1954. *Id.*

[3] At this time, the Third Circuit had jurisdiction to hear appeals from the District Court of the Virgin Islands on matters of Virgin Islands law under 28 U.S.C. § 1291 (1982 & Supp. IV 1987).

2012). On June 29, 2007, the trial court entered an Order denying Rodriguez's Petition for Writ of Habeas Corpus. On February 27, 2008, the Superior Court[4] entered a final Order denying Rodriguez's Motion for a New Trial and Motion for Reconsideration.[5]

## III. ISSUES

A. Whether the Superior Court correctly denied Rodriguez's Motion for a New Trial.

B. Whether the Superior Court correctly denied Rodriguez's Motion for Reconsideration of his Petition for a Writ of Habeas Corpus.

## IV. STANDARD OF REVIEW

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). The standard of review for a claim of insufficiency of the evidence on a criminal conviction is whether there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict. *Ritter v. People*, 51 V.I. 354, 359 (V.I. 2009); *see also United States v. Quiles*, 618 F.3d 383, 395 (3d Cir. 2010). The trial court's denial of Rodriguez's habeas corpus petition is reviewed *de novo. See Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007).

## V. DISCUSSION

### A. The trial court correctly denied Rodriguez's Motion for a New Trial

On appeal, Rodriguez does not argue that the Superior Court erred in finding that his Motion for a New Trial was untimely. Rather, Rodriguez

---

[4] Although Rodriguez's trial was held in the District Court, the Superior Court has jurisdiction over his Motion for a New Trial because it was filed after the Superior Court obtained jurisdiction over all local matters. *See supra note 2.*

[5] In an Order dated May 23, 2008, this Court addressed the fact that the Superior Court's Order dated February 27, 2008 — from which Rodriguez appeals — resolved both a civil motion (Motion for Reconsideration of denial of a Petition for a Writ of Habeas Corpus) and a criminal motion (Motion for a New Trial). Although both motions were addressed in one order, this Court docketed the matters as separate appeals and noted that the time limits for appealing criminal matters and civil matters are different. This Court concluded that the appeals of the Orders in both the civil and criminal matters were timely; therefore, both appeals were consolidated.

argues that he should be granted a new trial because there was insufficient evidence to sustain his conviction of First Degree Murder. Rodriguez asserted an identical argument before the Third Circuit when he appealed his conviction from the District Court's October 22, 1987 Judgment and Commitment. The Third Circuit affirmed the judgment of the District Court and concluded that there was sufficient evidence to sustain Rodriguez's conviction on First Degree Murder. To reiterate, during the time period when Rodriguez's case was tried, the District Court served as the trial court for violations of territorial laws and the Third Circuit served as the appellate court for appeals of judgments entered in the District Court. In 1987, the District Court served as both a federal court and a territorial court for Virgin Islands' cases. Hence, the Third Circuit had the same jurisdictional role over the District Court as we now have over the Superior Court.

■ The Superior Court concluded that Rodriguez's Motion for a New Trial was untimely under Rule 33 of the Federal Rules of Criminal Procedure. Rule 33 provides:

### (b) Time to File

(1) *Newly Discovered Evidence.* Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for new trial until the appellate court remands the case.

(2) *Other Grounds.* Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict of finding of guilty.

FED. R. CRIM. P. 33(b). Since Rodriguez's case was tried in the District Court, it would appear that Rule 33 would be applicable to Rodriguez's Motion for a New Trial. However, since Rodriguez's Motion was filed with the Superior Court, we also note that Rule 135 of the Superior Court Rules provides that "[a] motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment. A motion for a new trial based on other grounds shall be made within 10 days after [a] finding of guilty." Rodriguez filed his Motion for a New Trial on February 15, 2008, approximately twenty years after both the

District Court's and the Third Circuit's decisions in his case. This filing markedly exceeds the time limits of both Rule 33 of the Federal Rules of Criminal Procedure and Rule 135 of the Superior Court Rules. Therefore, the Superior Court correctly concluded that Rodriguez's Motion for a New Trial was untimely.

## B. The trial court did not err in denying Rodriguez's Motion for Reconsideration of his Petition for a Writ of Habeas Corpus

■ Rodriguez argues that the trial court erred in denying his Motion for Reconsideration of his Petition for Writ of Habeas Corpus. In its Order, the trial court stated that it was denying the Motion because the Petitioner had made no specific allegations as to why reconsideration was merited. In his Motion, Rodriguez alleges seven claims of error in the trial court: (1) erroneous findings of fact, (2) abuse of discretion, (3) clerical mistake in judgment, (4) miscarriage of justice, (5) verdict against the weight of evidence, (6) incorrect interpretation of law, and (7) mistaken interpretation of the element between justifiable homicide and premeditated homicide. However, in our review of Rodriguez's motion, and as noted by the trial court, Rodriguez made no specific allegations stating how the trial court erred in any of these categories when it denied his Petition for Writ of Habeas Corpus. Therefore, the trial court correctly denied Rodriguez's Motion for Reconsideration.

■ In his Notice of Appeal, Rodriguez only indicates that he is appealing the February 27, 2008 Order denying his Motion for Reconsideration of the denial of his Petition for Writ of Habeas Corpus. However, it is evident from his brief that Rodriguez is requesting that we find that the trial court erred when it denied his original Petition for Writ of Habeas Corpus. Rodriguez did not directly appeal the denial of his Petition for Writ of Habeas Corpus to the Supreme Court within sixty (60) days as provided in Supreme Court Rule 5(a)(1), but instead filed a motion for reconsideration with the trial court approximately seven months after the trial court entered its order denying his petition. Ordinarily, we would only consider the underlying judgment for which a subsequent Rule 60 motion was filed, if the Rule 60 motion is filed within fourteen (14) days of the entry of the order for which the motion is based. If the Rule 60 motion is filed within the fourteen-day time limit, the time for appealing such order is tolled. V.I.S.CT.R. 5 (a)(4)(vi). However, Rodriguez did not file his Motion for Reconsideration within the fourteen

days; therefore, the time was not tolled. Essentially, Rodriguez has not timely appealed the June 29, 2007 Order denying his Petition for Writ of Habeas Corpus. Nevertheless, Rodriguez is a *pro se* litigant, and the Appellees have not raised the issue of timeliness of his appeal. Because of the circumstances in this case, the Court will address the denial of his Petition for Writ of Habeas Corpus.[6] *See Vazquez v. Vazquez*, 54 V.I. 485, 490 (V.I. 2010) ("appellate courts will liberally construe purported notices of appeal, particularly those of *pro se* litigants, and allow an appeal to proceed so long as the intent to appeal the judgment is apparent, and there is not prejudice to the adverse party.")(internal quotation marks omitted).

Rodriguez is seeking to have his conviction reversed by filing a Petition for a Writ of Habeas Corpus with the Superior Court. In his Petition, Rodriguez confoundingly alleges a myriad of issues — including (1) that the "government's evidence was insufficient to warrant a submission of an issue of premeditation and deliberation to a jury . . .", (2) that the evidence he presented at trial was contrary to the evidence presented by the government, (3) that the trial court erred in failing to find that he acted in self-defense because of sufficient provocation or that he should have been charged with manslaughter instead of murder in the first degree, and (4) that the government obtained or solicited false evidence because the government promised one of the witnesses a reduction in that witness' sentence, if the witness testified against Rodriguez. The Superior Court denied Rodriguez's Petition for a Writ of Habeas Corpus.

██ Under the Virgin Islands habeas corpus statute, "[e]very person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." 5 V.I.C §1301. In his Petition, Rodriguez also claimed he was deprived of due process because the prosecutor solicited false testimony from witnesses during the course of

---

[6] The time constraints provided in Rule 5 for filing a notice of appeal constitute a claims-processing rule rather than a jurisdictional prerequisite, at least when applied to a non-interlocutory civil action. *See Vazquez v. Vazquez*, 54 V.I. 485, 489-90 (V.I. 2010) (deciding that the thirty-day requirement to file a notice of appeal found in Rule 5 is not jurisdictional and may be waived by a party's failure to raise the timeliness issue). *But see First American Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 605-12 (V.I. 2011) (finding that the thirty-day time limit for appeals set forth in Title 4, section 33(d)(5), is applicable to interlocutory civil appeals, as well as appeals by the Government in criminal cases and is jurisdictional in those specific categories of actions).

the trial. In denying Rodriguez's petition, the trial court found that he had not proven that the witnesses provided false testimony. In so finding the trial court correctly noted that to establish a due process violation based on a state's solicitation of, or failure to correct, false evidence, a defendant must show: (1) the falsity and materiality of testimony, and (2) prosecutor's knowledge of such falsity. *Bell v. True*, 413 F. Supp. 2d 657, 677 (W.D.Va. 2006) (citing *Basden v. Lee*, 290 F.3d 602, 614 (4th Cir. 2002)). Based on our examination of the trial record, we conclude that the trial court correctly decided that Rodriguez failed to establish either of these requirements. As proof of his claim, Rodriguez only pointed the Superior Court to the fact that the alleged perjurer — Rodriguez's former co-defendant and alleged accomplice — made several prior inconsistent statements that conflicted directly with his trial testimony. Even if such evidence proved that the former co-defendant was mendacious at some juncture in the case, it does not prove that his trial testimony was false. It is equally possible that the co-defendant's prior inconsistent statements were untrue and his trial testimony was true. Furthermore, Rodriguez presented no evidence that, even if the testimony provided in court was false, the prosecutor knew of such falsity.

■ In addressing Rodriguez's Petition for Writ of Habeas Corpus regarding the sufficiency of the evidence issue, the trial court held that a petition for writ of habeas corpus was not the appropriate mechanism for challenging his conviction based on sufficiency of the evidence. We agree with the trial court's conclusion. The habeas corpus statute codified in title 5, section 1301 of the Virgin Islands Code has rarely been interpreted in this jurisdiction. Consequently, there are no binding cases applying any preclusion principles in the context of this case. However, it is a cogent legal principle that a writ of habeas corpus is not the vehicle in which to raise sufficiency of the evidence claims.

■ A significant number of state courts have refrained from addressing sufficiency of the evidence claims in petitions for writ of habeas corpus, finding that such matters should be addressed on direct appeal where the reviewing court can issue a writ of error. *Ex parte Morgan Cir. Ct.*, 620 So. 2d 148, 151 (Ala. Crim. App. 1993); *Summerville v. Warden, State Prison*, 229 Conn. 397, 641 A.2d 1356, 1365 (1994); *Warner v. Cochran*, 135 So. 2d 421, 422 (Fla. 1961); *Littles v. Balkcom*, 245 Ga. 285, 264 S.E.2d 219, 220 (1980); *Clark v. State*, 92 Idaho 827, 452 P.2d 54, 60 (1969); *State v. Wiley*, 260 Minn. 88, 108 N.W.2d 774, 779 (1961);

*Tomich v. State*, 377 P.2d 756, 757 (Mont. 1963); *People ex rel. Hampton v. Deegan*, 35 A.D.2d 1003, 317 N.Y.S.2d 962, 962 (N.Y. App Div. 1970); *State ex rel. Bruggeman v. Leonard*, 714 N.E.2d (Ohio 1999); *Com. ex rel. Green v. Rundle*, 422 Pa. 236, 221 A.2d 187, 189 (1966); *Long v. State*, 510 S.W.2d 83, 89 (Tenn. Crim. App. 1974); *In re Pruitt*, 6 S.W.3d 363, 364 (Tex. App. 1999); *Magoon v. Smith*, 130 Vt. 603, 298 A.2d 820 (1972); *Pettus v. Peyton*, 207 Va. 906, 153 S.E.2d 278, 281 (1967); *Cannellas v. McKenzie*, 160 W. Va. 431, 236 S.E.2d 327, 331 (1977); *State ex rel. McCaffrey v. Shanks*, 369 N.W.2d 743, 746 (Wis. Ct. App. 1985). As noted by the trial court in its Order dated June 29, 2007, the purpose of a writ of habeas corpus is not to determine guilt or innocence, or to weigh the evidence submitted at trial, or to determine the strength of the prosecutor's case. The trial court further stated that habeas corpus review is to prevent manifest injustice and there may be an occasion where a reviewing court may grant a writ, after finding that a conviction was imposed where there was no substantial evidence.

 Here, Rodriguez appealed his conviction of the first degree murder charge based on the sufficiency of the evidence. Rodriguez is simply endeavoring to repackage his argument of "insufficiency of the evidence" in his petition for a writ of habeas corpus. On his direct appeal two decades ago, the Third Circuit reviewed Rodriguez's sufficiency of the evidence arguments and issued a memorandum opinion stating that

> [a]lthough Rodriguez points to evidence indicating that he did not act with premeditation, the evidence introduced by the government, taken in the light most favorable to the government, is sufficiently substantial to support the conviction on the charge of first degree murder. In light of this conclusion, and the fact that the charge of first degree murder was properly submitted to the jury, we need not consider Rodriguez' contention that the evidence supported only a charge of voluntary manslaughter.

(J.A. at 529.) Accordingly, Rodriguez's Petition for a Writ of Habeas Corpus raises the same issues regarding sufficiency of evidence that have already been reviewed and decided by the Third Circuit in his direct appeal more than two decades ago.

 "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621,

118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). It is settled legal precedent that criminal defendants are "barred from using [post-conviction collateral attacks like habeas] to relitigate issues decided on direct appeal." *United States v. Ramirez*, 327 Fed. Appx. 751, 752 (9th Cir. 2009) (citing *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985)); *see also Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011) ("With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal.") (citing *Davis v. United States*, 417 U.S. 333, 346-47, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)); *Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010) ("petitioner may not 'relitigate questions which were raised and considered on direct appeal.' ") (quoting *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007)); *United States v. Linder*, 552 F.3d 391, 396-97 (4th Cir. 2009) (a defendant "may not circumvent a proper ruling on his *Booker* challenge on direct appeal by re-raising the same challenge" on habeas); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same); *see United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009)("Petition cannot be used to relitigate questions which were raised and considered on direct appeal"); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (same). Accordingly, the Superior Court was correct in rejecting Rodriguez's Motion for Reconsideration of the denial of his Petition for a Writ of Habeas Corpus.

## VI. CONCLUSION

After reviewing all facets of Rodriguez's appeal, we affirm the Superior Court's February 27, 2008 Order denying Rodriguez's Motion for a New Trial and his Motion for Reconsideration of the Superior Court's June 29, 2007 Order denying his Petition for a Writ of Habeas Corpus.

HODGE, *concurring*.

Although I concur with the majority's conclusion that Rodriguez is not entitled to habeas relief, I write separately because I believe that a resolution of this appeal requires us to more carefully consider the scope of the habeas corpus writ in the Virgin Islands.[1] The trial court rejected

---

[1] This Court has addressed our habeas statute in other cases, but has not fully developed its reasoning regarding the scope of the writ. In *Ibrahim v. Gov't of the V.I.*, S. Ct. Civ. No. 2007-0076, 2008 V.I. Supreme LEXIS 20, *2 (V.I. Jan. 18, 2008) (unpublished), this Court stated that a habeas petition is not the proper mechanism for relitigating issues already decided.

Rodriguez's habeas petition in part because it decided that petitioners cannot raise a claim of insufficient evidence during a habeas proceeding. In support of this proposition, the trial court cited only cases decided by other states' courts. The majority opinion agrees, relying on decisions issued by federal[2] and other state courts. I believe that if we are to decide as a matter of law whether sufficiency of the evidence is cognizable in a habeas proceeding, and whether a petitioner may relitigate issues decided on direct appeal, we must ground our conclusions in a thorough analysis of the sources of habeas law in the Virgin Islands.

It is proper to begin by considering the Virgin Islands statute on habeas corpus. Enacted as part of the 1921 Code, the statute provides the right of habeas corpus, explains the process by which it is to be implemented, and limits the circumstances under which a habeas court may order the discharge of the petitioner. 5 V.I.C. §§ 1301-25.

The first section of the habeas chapter in title 5 of the Virgin Islands Code states:

Every person unlawfully imprisoned or restrained of his liberty, under

---

However, *Ibrahim* was an unpublished case and, and such, is of limited precedential value. *See* V.I.S.CT. I.O.P. 5.7.1 (Court does not regard unpublished decisions to be binding precedent guiding disposition of other cases). Moreover, it was decided in the earliest years of this Court's jurisdiction. Importantly, the only case cited in *Ibrahim* to bolster this proposition was a case from the Third Circuit Court of Appeals, *United States v. Hollis*, 569 F.2d 199, 206 (3d Cir. 1977), and we did not explain why this limit declared by a federal court interpreting a federal law should likewise guide our interpretation of our own habeas laws. I take the opportunity of this case to explain the sources of the limits on the habeas writ in the Virgin Islands.

[2] Notably, all of the cases cited by the majority for the proposition that a party may not relitigate issues decided on appeal are federal cases, and most of them are decisions issued *after* the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996, which strictly limited access to habeas in the federal courts. 28 U.S.C. § 2254(d)(1)-(2). Although we have stated many times that we may consider federal cases interpreting federal statutes when those statutes have language similar to the language of a Virgin Islands statute, the federal habeas statutes in Chapter 153 of Title 28 of the U.S. Code are not similar to the local habeas laws. *See In re Rogers*, 56 V.I. 325, 333-34 (V.I. 2012) ("[W]hen the language of a federal statute and that of our local statute are very similar, federal case law may be instructive in interpreting the local law."); *Mulley v. People*, 51 V.I. 404, 411 (V.I. 2009) (same); *People v. Pratt*, 50 V.I. 318, 323 (V.I. 2008) (same). Consequently, decisions interpreting federal habeas statutes are not directly applicable, and the majority opinion does not make clear why the application of our own habeas laws should be governed by case law interpreting a federal statute.

any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.

5 V.I.C. § 1301.

The Code further provides that the custodian of the petitioner must explain under what lawful order the petitioner is detained. 5 V.I.C. § 1308(a) (referring to the process as the "return" of the writ). At a hearing on the petition, 5 V.I.C. § 1310, the petitioner "may deny or controvert any of the material facts or matters set forth in the return, or except[3] to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge." 5 V.I.C. § 1311.

From the language of the statute, it would appear that a petitioner could raise sufficiency of the evidence as an objection in his habeas proceeding. 5 V.I.C. § 1311 (permitting a petitioner to "except to the sufficiency" of the allegations made in the return). But reading on, section 1314 provides the limited circumstances under which a petitioner could succeed on a habeas writ and therefore be discharged from confinement. It states:

> If it appears on the return of the writ that the prisoner is in custody by virtue of process from any court or judge or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restriction of section 1313 of this title:
>
> (1) When the jurisdiction of such court or officer has been exceeded.
>
> (2) When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge.
>
> (3) When the process is defective in some matter of substance required by law rendering such process void.
>
> (4) When the process, though proper in form, has been issued in a case not allowed by law.
>
> (5) When the person having custody of the prisoner is not the person allowed by law to detain him.

---

[3] Although it is not commonly used in this manner today, one definition of "except to" is "object to." BLACK'S LAW DICTIONARY 664 (9th ed. 2009).

(6) Where the process is not authorized by any order, judgment or decree of any court, nor by any provision of law.

(7) Where a party has been committed on a criminal charge without reasonable or probable cause.

5 V.I.C. § 1314.

From the plain text of the statute, it does not appear that a petitioner could succeed unless he proves that one of the subsections of section 1314 applies. However, although the Court lacks legislative history and other case law to interpret these provisions, it may look to case law interpreting similar provisions in other states to confirm this interpretation. And " 'where a Virgin Islands statute is patterned after a statute from another jurisdiction, the borrowed statute shall be construed to mean what the highest court from the borrowed statute's jurisdiction, *prior* to the Virgin Islands enactment, construed the statute to mean.' " *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011) (quoting *V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't*, 47 V.I. 430, 442 (V.I. Super. Ct. 2006) (citing *Berkeley v. West Indies Enterprises, Inc.*, 480 F.2d 1088, 1092, 10 V.I. 619 (3d Cir. 1973)) (emphasis in original)).

Missouri has a similar statute which has existed largely without substantive modification since 1825.[4] In 1886, the Supreme Court of Missouri interpreted the statute in *Ex parte Boeninghausen*, 91 Mo. 301,

---

[4] The Missouri statute currently reads:

> If it appear that the prisoner is in custody by virtue of process from any court legally constituted, or issued by any officer in the service of judicial proceedings before him, such prisoner can only be discharged in one of the following cases:
> (1) Where the jurisdiction of such court or officer has been exceeded, either as to matter, place, sum or person;
> (2) Where, though the original imprisonment was lawful, yet, by some act, omission or event, which has taken place afterward, the party has become entitled to be discharged;
> (3) Where the process is defective in some matter of substance required by law, rendering such process void;
> (4) Where the process, though in proper form, has been issued in a case or under circumstances not allowed by law;
> (5) Where the process, though in proper form, has been issued or executed by a person who is not authorized by law to issue or execute the same, or where the person having the custody of such prisoner under such process is not the person empowered by law to detain him;
> (6) Where the process is not authorized by any judgment, order or decree, nor by any provision of law.

1 S.W. 761 (1886). Relying on precedent, it held that a prisoner could not use a habeas proceeding under Missouri's statute to challenge even the constitutionality of the law of which he was convicted. *Id.* at 762 ("[W]hen a prisoner has been arrested on legal process by a court having jurisdiction of the person and offense, is in custody of the proper officer, and by virtue of a provision of law, this court will not, on a writ of habeas corpus, inquire into the constitutionality of the law under which he was arrested."). Instead, the habeas court was confined to reviewing only those challenges described in Missouri's version of section 1314.

Puerto Rico has a nearly identical statute, which has existed since 1902.[5] In 1904, the Supreme Court of Puerto Rico declared that the habeas law, which was then new to the island, could not be used as a substitute for appeal and could not serve as a means of retrying questions of fact. *Ex parte Cintrón*, 1904 WL 3969, 5 P.R. Dec. 90 (P.R. 1904) (in Spanish). Puerto Rico's habeas statute was based on section 1487 of the California Code of Criminal Procedure.[6] In 1861, the Supreme Court of

---

MO.ANN. STAT. § 532.430 (West 2012).

[5] The Puerto Rico habeas statute states in relevant part:

> If it appears on the return of the writ that the prisoner is in custody by virtue of process from any court of Puerto Rico, or judge, or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restrictions of § 1754 of this title:
>
> (1) When the jurisdiction of such court or officer has been exceeded.
>
> (2) When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge.
>
> (3) When the process is defective in some matter of substance required by law rendering such process void.
>
> (4) When the process, though proper in form, has been issued in a case not allowed by law.
>
> (5) When the person having custody of the prisoner is not the person allowed by law to detain him.
>
> (6) Where the process is not authorized by any order, judgment, or decree of any court, nor by any provision of law.
>
> (7) Where a party has been committed on a criminal charge without reasonable or probable cause.

P.R. LAWS ANN. tit. 34, § 1755 (2012).

[6] California's statute provides:

> If it appears on the return of the writ that the prisoner is in custody by virtue of process from any Court of this State, or Judge or officer thereof, such prisoner may be discharged in any of the following cases, subject to the restrictions of the last section:
>
> 1. When the jurisdiction of such Court or officer has been exceeded;

California emphasized that its habeas laws were "not framed to retry issues of fact, or to review the proceedings of a legal trial." *Ex parte Bird*, 19 Cal. 130 (1861).

As noted above, this Court often construes our statutes consistent with the case law from states with identical statutes, at least when the decisions of those states preceded the enactment of our statute. It is clear from the cases discussed above that our habeas corpus statute, as adopted as part of the 1921 Code, strictly limited the availability of the writ to those circumstances specifically provided in section 1314 of title 5, and did not permit petitioners to raise in their claims complaints about the sufficiency of the evidence or general trial irregularities. If the Court were limited to the statute as a source of its habeas power then Rodriguez's charges of prosecutorial misconduct and insufficient evidence would have no remedy here.

However, the Court is not constrained entirely by statutory law, and may consider both constitutional and common law sources of habeas authority. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978 (V.I. 2011) (noting that this Court has the power to interpret and modify the common law). In 1954, as part of the Virgin Islands Revised Organic Act, Congress enacted a Suspension Clause, stating that "[a]ll persons shall have the privilege of the writ of habeas corpus and the same shall not be suspended except as herein expressly provided." Revised Organic Act § 3, 48 U.S.C. § 1561.[7] The question presents itself, then, of what was

---

2. When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to a discharge;

3. When the process is defective in some matter of substance required by law, rendering such process void;

4. When the process, though proper in form, has been issued in a case not allowed by law;

5. When the person having the custody of the prisoner is not the person allowed by law to detain him;

6. Where the process is not authorized by any order, judgment, or decree of any Court, nor by any provision of law;

7. Where a party has been committed on a criminal charge without reasonable or probable cause.

CAL. PENAL CODE § 1487 (West 2012).

[7] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (2006), reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 2012) (preceding V.I. CODE ANN. tit. 1).

Congress's understanding of the scope of the writ of habeas corpus when it created the Revised Organic Act; for if Congress understood the privilege of habeas corpus to be broader than the statutory laws regarding habeas adopted in the 1921 Code, Congress's formulation of the privilege as part of the Revised Organic Act would supersede any local statutory law. U.S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); 48 U.S.C. § 1561 ("All laws enacted by Congress with respect to the Virgin Islands and all laws enacted by the territorial legislature of the Virgin Islands which are inconsistent with the provisions of [Section 3 of the Revised Organic Act] are repealed to the extent of such inconsistency.").

The legislative history for the Revised Organic Act provides no guidance concerning the habeas provision, 83 P.L. No. 517, 68 Stat. 497 (1954), yet the Court is not without interpretative tools. It is appropriate to presume that Congress intended that the meaning of the habeas provision it included in our Revised Organic Act would be consistent with the Supreme Court's interpretation of the habeas provision of the U.S. Constitution. *See United States v. Wells*, 519 U.S. 482, 495, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997) (presuming "that Congress expects its statutes to be read in conformity with [Supreme Court] precedents"); *see also* Conf. Rep. No. 2105, *reprinted in* 1954 U.S.C.C.A.N. 2619, 2620 (noting that Section 3 of the Revised Organic Act "provides a bill of rights which is in considerable extent similar to the Bill of Rights of the United States Constitution").

Turning now to the Supreme Court's interpretation of the right to habeas corpus, it has held that, traditionally, habeas proceedings have been available, at a minimum, to remedy constitutional violations. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301-03, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (noting that, "at the absolute minimum, the Suspension Clause protects the writ 'as it existed in 1789,' " and further stating that "early [Supreme Court] cases [addressing the common law writ of habeas corpus] contain no suggestion that habeas relief in cases involving Executive detention was only available for constitutional error" (quoting *Felker v. Turpin*, 518 U.S. 651, 663-64, 116 S. Ct. 2333, 135 L. Ed. 2d

827 (1996))); *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462, 76 S. Ct. 965, 100 L. Ed. 1331 (1956) (noting that, on review of a denial of habeas corpus, the Court "[stood] ready to correct violations of constitutional rights," including trial errors that might impact a defendant's due process rights, although finding none in that case).

At the time of the founding of this country, courts interpreted the constitutional right to habeas corpus to be coextensive with interpretations given to the common law right to the writ. *Sunal v. Large*, 332 U.S. 174, 184-87, 67 S. Ct. 1588, 91 L. Ed. 1982 (1947) (Frankfurter, J. dissenting) (discussing the history of the right to habeas corpus and its interpretation by the Supreme Court). Subsequently, however, the scope of the writ was enlarged. It remained true that "habeas corpus may not be used as a writ of error," *Eagles v. United States ex rel. Samuels*, 329 U.S. 304, 317, 67 S. Ct. 313, 91 L. Ed. 308 (1946). However, in *Sunal*, Justice Frankfurter noted that the Court had, in various cases, permitted habeas to be used to address, *inter alia*, the insufficiency of the evidence to support a conviction, at least where "no other remedy was available and the error appeared flagrant." 332 U.S. at 186 (citing cases). Therefore, it is reasonable to presume that when Congress adopted the Revised Organic Act with its habeas corpus provision, it intended that the right in this Territory be interpreted consistent with the common law understanding of the writ at the time of the enactment of the ROA. *See Wells*, 519 U.S. at 495. As discussed above, to the extent this interpretation was inconsistent with the local habeas statute, the Revised Organic Act effected a repeal of that law regarding the grounds and scope of habeas.[8] 48 U.S.C. § 1561. Therefore, I could hold that, at a minimum, the constitutional right to habeas corpus in the Virgin Islands includes the right to challenge the sufficiency of the evidence where "no other remedy [is] available and the error appear[ed] flagrant." *Sunal*, 332 U.S. at 186.

However, after the *Sunal* decision, the scope of the constitutional right to habeas corpus expanded. The power of habeas courts reviewing

---

[8] To be clear, my holding would be limited: any provision of our local statute that is interpreted to exclude challenges to the sufficiency of the evidence in habeas proceedings is inconsistent with, and was repealed by, the Revised Organic Act. There is no cause in this case to theorize whether any other provision of our habeas statute was repealed by the Revised Organic Act, and thus my holding would not reach that question.

collateral challenges to criminal convictions to consider claims of insufficiency of the evidence was made clear in subsequent decades. In *In re Winship*, the Supreme Court declared, "[l]est there remain any doubt," that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Nine years later, the Court held that a violation of this constitutional right — that is, a conviction on insufficient evidence — was remediable by way of habeas. *See Jackson v. Virginia*, 443 U.S. 307, 319-21, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (further describing the standard to be applied as whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"), superseded by statute, *see* 28 U.S.C. § 2254(d).[9] Unlike earlier cases, these decisions did not condition habeas review for sufficiency on the lack of another adequate remedy or the existence of a "flagrant" error. *Cf. Sunal*, 332 U.S. at 186.

From these precedents, we can distill the following leitmotifs: (1) that traditional habeas has been used to remedy constitutional violations, and (2) that for at least the last forty-three years, the lack of sufficient evidence to sustain a criminal conviction has been considered a constitutional violation, specifically of the Due Process Clauses of the Fifth and Fourteenth Amendments.

From other contexts, we can further conclude that this Court must apply the Supreme Court's interpretation of applicable constitutional rights, even if those interpretations issued *after* Congress created the Revised Organic Act. For example, although the Revised Organic Act, along with its Bill of Rights, was enacted in 1954, long before the U.S. Supreme Court decided *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), this Court has not hesitated to apply the *Melendez-Diaz* interpretation of the Confrontation Clause of the Sixth Amendment or its holding regarding the admissibility of testimonial

---

[9] Almost twenty years after the *Jackson* decision, the Anti-Terrorism and Effective Death Penalty Act of 1996 subsequently limited federal habeas review of issues already decided by state courts on direct review to those circumstances in which the state court unreasonably applied federal law, or made an unreasonable determination of the facts. Pub. L. No. 104-132, 110 Stat. 1218 (1996).

affidavits. *See Melendez v. People*, 56 V.I. 244, 263 (V.I. 2012). It is axiomatic that we apply current U.S. Supreme Court interpretations of constitutional rights, including the right to Due Process. Consequently, the U.S. Supreme Court's 1979 interpretation of the Due Process Clause as encompassing challenges to convictions on the grounds of insufficient evidence controls in this Territory.[10] A habeas petition addressing insufficient evidence, then, properly raises a constitutional claim and is cognizable in habeas corpus proceedings in the Virgin Islands courts.[11]

I would hold, therefore, that the trial court erred by declaring that, as a matter of law, petitioners are not permitted to raise insufficiency of the evidence in a habeas proceeding.[12] In addition, while the trial court did not address the scope of the writ as to Rodriguez's perjury claim, it is useful to note that the suborning of perjury by the government also constitutes a violation of the Due Process Clause and thus is cognizable in a habeas proceeding. *Sanders v. United States*, 373 U.S. 1, 10, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963) (citing *Price v. Johnson*, 334 U.S. 266, 287-93, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948)).

---

[10] *Cf. Chinnery*, 55 V.I. at 519 n.6 (emphasizing that while this Court generally presumes our Legislature intended our statute to have the same meaning as given to the statute of the state from which we borrowed it, such a presumption applies only to interpretations that *preceded* our enactment of the mirror statute, not decisions issued later, but not applying this principle to interpretations of the Constitution).

[11] The majority cites a number of state court decisions for the proposition that in these states, habeas courts may not review the sufficiency of the evidence. It is noteworthy, though, that eighteen of those twenty-five decisions were issued *before* the Supreme Court ruled in *Jackson* that insufficiency of the evidence constitutes a constitutional claim cognizable in habeas. And other cases cited do not fully explain the particular state's habeas law. For example, the majority cites *Summerville v. Warden*, 229 Conn. 397, 641 A.2d 1356 (1994), but the cases cited by the Supreme Court of Connecticut in *Summerville* make clear that petitioners *may* raise constitutional claims when they can show that they did not intentionally forego raising those arguments on appeal. And although the majority cites *Littles v. Balkcom*, 245 Ga. 285, 264 S.E.2d 219 (1980) to explain Georgia law, the Supreme Court of Georgia said five years later that the statutes of that state permit challenges to sufficiency in habeas proceedings, but the petitioner must show cause for his failure to raise it on direct appeal, and what prejudice he would suffer if the claim was not reviewed. *Valenzuela v. Newsome*, 253 Ga. 793, 325 S.E.2d 370, 373 (1985). In sum, while the holdings of courts of states in which habeas is controlled by state constitution or statute are of limited value, it is noteworthy that the state courts are not nearly as hostile to the prospect of reviewing sufficiency on habeas as the majority makes it appear.

[12] Given the lack of controlling interpretation of the Virgin Islands habeas statute and the applicability of common law habeas in this Territory, the error is understandable. The trial court did not have the benefit of binding case law considering these issues.

Having concluded that Rodriguez was entitled as matter of law to raise his sufficiency and perjury claims in the habeas proceeding, I nonetheless concur in the result as declared in the majority opinion and decline to reach the merits of his claims. While Rodriguez's claims are, by their nature, within the scope of our habeas laws, well-recognized judicially developed principles limit his right to this remedy.

The majority agrees that certain equitable principles apply in Rodriguez's case. However, the majority grounds its analysis in case law interpreting the federal habeas statute which, as discussed above, does not apply to the Virgin Islands. Instead, the application of these principles must be based on a specific federal law applicable to the Virgin Islands, a Virgin Islands statute, or the common law. Although there is no applicable statute,[13] there is guidance in the U.S. Supreme Court's interpretation of the equitable limitations to habeas.

It is clear that *res judicata* does not apply in habeas proceedings. *Sanders*, 373 U.S. at 7-8 ("At common law, the denial by a court or judge of an application for habeas corpus was not res judicata. . . . Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged."); *Salinger v. Loisel*, 265 U.S. 224, 230, 44 S. Ct. 519, 68 L. Ed. 989 (1924); *cf. Smith v. Turnbull*, 54 V.I. 369, 375-77 (V.I. 2010) (considering and rejecting on the merits a claim that the resolution of the plaintiff's earlier habeas corpus petition should serve as *res judicata* of facts relevant to the pending civil rights action). However, the U.S. Supreme Court has recognized that judicially evolved principles may limit habeas. Courts must dispose of habeas petitions by applying "sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought," and a court may consider, and in appropriate cases give controlling weight to, the fact that another court has already fully considered and decided the issue against the petitioner.

---

[13] In *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 457 (V.I. 2012), we recognized that in the Virgin Islands Code there is no explicit statutory limit on the number of habeas petitions a person could file. However, at the time the U.S. Supreme Court wrote its decision in *Sanders v. United States*, 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963), there likewise was no statutory limit on the number of petitions that could be filed, yet the Court still determined that common law limits could be placed on habeas, as discussed in the text. Such limits are not numerical limits, as *Bryan* recognized, yet they still serve to ensure that only new claims, previously undecided or previously unreviewable, are brought before the courts.

*Sanders*, 373 U.S. at 9. *See McCleskey v. Zant*, 499 U.S. 467, 479-80, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (citing *Ex parte Cuddy*, 40 F. 62 (C.C.S.D. Cal. 1889)) (recognizing that when a second habeas petition is based on the same facts that were presented, or which could have been presented, in the first petition, the court can take that into consideration, and, in some instances, such a fact may justify a refusal to entertain the subsequent habeas petition); *see also Manlove v. Sullivan*, 108 N.M. 471, 775 P.2d 237, 241-42 (1989) ("At least against the state, we believe collateral estoppel principles may, at the discretion of a subsequent habeas corpus court, prevent relitigation of issues argued and decided on a previous habeas corpus petition if the resolution of such issues was necessary to the previous decision") (interpreting and applying *Sanders*).

This principle, which I would explicitly adopt here, holds that where a habeas petitioner presents a claim already fully considered and decided against him by a competent court,[14] that fact may be considered by the reviewing court, and may serve as the basis for the denial of the petition.[15]

---

[14] In *Sanders*, the U.S. Supreme Court addressed the guidelines governing a federal habeas court's collateral review of a state court judgment. It does not necessarily follow, then, that if a petitioner such as Rodriguez raised some claims in a direct review, and lost, and then attempted to raise them again in a state proceeding, that the same principle would bar review. However, considering the structure of our courts and of judicial review in the Virgin Islands, there is no reason to differentiate between, on the one hand, a second habeas petition following a first petition and, on the other, a first habeas petition following direct review. Either process could result in the application of the same equitable principles. *See Palmer v. Dermitt*, 102 Idaho 591, 635 P.2d 955, 959 (1981) (applying the abuse-of-the-writ doctrine to the first habeas petition following direct appeal) (citing *Sanders*, 373 U.S. 1). In this case, even if this Court could review the Third Circuit's decision regarding the sufficiency of the evidence against Rodriguez, we would not do so because the claim has been fully considered and decided by a competent court. Furthermore, in future cases where a defendant who obtained direct appellate review to this Court files a habeas petition in the Superior Court, the Superior Court would be bound to follow this Court's pronouncements on any claims considered and addressed by this Court. It should be noted that we have previously held that *nothing in our habeas statute requires a criminal defendant to file a direct appeal before pursuing habeas relief. Ferdinand v. Bureau of Corr.*, S. Ct. Civ. No. 2008-0059, 2011 V.I. Supreme LEXIS 24 , *2 n.3 (V.I. July 19, 2011) (unpublished). This is not inconsistent with what I would hold today: such a defendant may forego a criminal appeal, but his right to habeas relief would be limited to those issues which he could not have raised on direct appeal, or those issues the waiver of which would result in some grave and manifest injustice.

[15] Although a habeas court could reject a petition on the grounds that it had been fully decided, the court *retains discretion to nonetheless reach the merits of the petition if the ends of justice required it.* Such circumstances might include: (1) if a factual issue was decided without a full and fair evidentiary hearing; (2) a legal question was decided but superseded

However, that is not the only common law limit on the right to habeas. The U.S. Supreme Court has adopted another line of cases addressing the "abuse of the writ" doctrine. It has held that where a petitioner files a second petition raising issues which could have been raised in the first petition, the court need not entertain those claims. *Price*, 334 U.S. at 287-93 (further noting that where a petitioner, at the time of the first petition, did not have available to him evidence that the government suborned perjury, the abuse-of-the-writ doctrine would not apply). It explained that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Id.* at 18. This principle is equally applicable to the courts of the Virgin Islands. It is the government's initial burden to plead the "abuse of the writ." *Id.* at 10-11.

Applying these common law, judicially developed principles, I would hold that Rodriguez is not entitled to relief. Rodriguez's claim that there was insufficient evidence of premeditation was raised before — and rejected by — the Third Circuit on direct appeal. *Gov't of the V.I. v. Rodriguez*, No. 87-3728 (3d Cir. May 2, 1988) (unpublished). Rodriguez has not established that the ends of justice would be served by reviewing his sufficiency argument again. Consequently, I would affirm the trial court's decision on this claim.

Furthermore, I would decide that Rodriguez's argument that the prosecutor solicited perjured testimony must also fail. The government has raised an abuse-of-the-writ challenge. (Appellee's Br. 12.) Rodriguez apparently did not raise this claim as part of his direct appeal, and he does not demonstrate that he was unable to raise it on direct appeal. For instance, the evidence he cites to substantiate his perjury claim involves several inconsistent statements made by a witness prior to trial that conflicted with his trial testimony, evidence that was by its very nature available to Rodriguez at the time of the trial. He could have raised the argument then in post-trial motions, or on direct appeal. Consequently, his challenge constitutes an abuse of the habeas writ, and should be rejected on this ground.

---

by an intervening change of law, or (3) there is some other compelling justification for failing to raise the argument at a prior proceeding. *Sanders*, 373 U.S. at 15-17.

I concur in the judgment of the majority because I believe the trial court properly rejected Rodriguez's habeas petition. However, as I stated earlier, I write separately because I believe our courts require guidance on the scope of the writ of habeas corpus in this Territory. Our decision must not rely, as the majority's does, on precedent interpreting a federal statute that cannot and does not apply to petitioners before our courts; neither should it rely on state court decisions that apply limits derived from their own statutes, rules, or precedent. Instead, recognizing that the Congress intended the Suspension Clause of the Revised Organic Act to carry with it the rights and limits of common law habeas as judicially developed, this Court should hold that habeas petitioners can raise constitutional arguments, including sufficiency of the evidence, but that their right to do so is necessarily limited by judicially developed equitable principles, such as the abuse-of-the-writ doctrine. *Manlove*, 775 P.2d at 241-42.